**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO.

ABS-CBN CORPORATION, a
Philippines corporation,
ABS-CBN FILM PRODUCTIONS, INC.
d/b/a Star Cinema, a Philippines corporation,
and ABS-CBN INTERNATIONAL
COROPORATION, a California corporation,

      Plaintiffs

vs.

THE PARTNERSHIPS and
UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE "A"
and DOES 1-100,

      Defendants.

_____/

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

ABS-CBN CORPORATION, ABS-CBN FILM PRODUCTIONS, INC. d/b/a Star

Cinema, and ABS-CBN INTERNATIONAL CORPORATION (hereinafter collectively,

"Plaintiffs" or "ABS-CBN"), by and through their counsel, hereby sue Defendants, the

Individuals, the Partnerships and/or Unincorporated Associations identified on Schedule "A" and

Does 1-100 (collectively "Defendants"), and allege as follows:

## NATURE OF THE CASE

1.     This is an action for willful trademark and copyright infringement.  ABS-CBN is

the largest media and entertainment company in the Philippines.  With its twelve large

production studios, ABS-CBN produces over 2,430 hours of original content every year for its

numerous television stations, including daily drama teleseries, drama anthologies, movies,

musical and variety shows, game shows, reality shows, news programs, current affairs programs, documentaries, music video 24/7 (Myx), AM talk radio with DJ live on-screen (DZMM), FM radio shows with DJ live on-screen (MOR), and public affairs programs.  Every day, ABS-CBN's programming is broadcast worldwide through its agreements with dozens of cable companies' premium channels, telecom provider partnerships, Internet subscription services, and through its own 24-hour cable and satellite service, which offers pay-per-view programming.

2.     Like many creators of movies and TV content, ABS-CBN is confronted with the online infringement of the intellectual property in its programs and brands by pirate websites operating under a variety of domain names, including those identified on Schedule "A" hereto (the "Subject Domain Names").  Through their various websites, Defendants advertise and hold out to the public that they have ABS-CBN's copyrighted works and perform ABS-CBN's copyrighted works over the Internet, in order to illegally profit from ABS-CBN's intellectual property, without ABS-CBN's consent.

3.     On information and belief, Defendants, including specifically through the domain names identified on Schedule "A" hereto, provide on-demand streaming performances of full-length versions of ABS-CBN's TV shows and movies through their respective websites. Defendants facilitate access to the infringing content which is streamed through their respective websites, rather than users of the websites uploading the content.  Defendants often display the latest content to their servers within minutes or hours of the original broadcast in the Philippines. Further, Defendants control the organization and presentation of the content by themselves, providing links to ABS-CBN shows and promote and advertise the content as ABS-CBN's, including through the use of ABS-CBN's trademarks; and stream the shows for users' viewing through their respective websites.

2

4.      On information and belief, Defendants profit from their infringement at an enormous cost to ABS-CBN.  Defendants are responsible for many infringements of ABS-CBN's copyrighted TV shows and movies, causing substantial harm to ABS-CBN, which has made significant investments of money, time and creative energies to produce the content and to develop the technical platform, branding, promotions and sales, and goodwill around its content and distribution services.  Moreover, because ABS-CBN operates worldwide, including through partnership agreements with premium cable channels, through its own Internet pay subscription service, and through its own 24-hour pay-per-view programming, free streaming of ABS-CBN's content by Defendants deprive ABS-CBN of substantial revenue that would otherwise be derived from consumers; deprive ABS-CBN's legitimate digital and broadcast advertisers and sponsors from having their ads and commercials viewed by these consumers; diverts customers worldwide from its subscription services and confuses consumers as to the source and legitimacy of its content and distribution channels; harms ABS-CBN's ability to continue to build out its paying customer base, particularly in international markets; and interferes with and harms ABS-CBN's distribution and sponsorship agreements, hurting its and its partners' profits and reputations.

5.      Defendants' websites are classic examples of pirate operations, having no regard whatsoever for the rights of ABS-CBN and willfully infringing ABS-CBN's copyrighted works. As a result, ABS-CBN requires this Court's intervention if any meaningful stop is to be put to Defendants' piracy.

## JURISDICTION AND VENUE

6.      This is an action seeking damages and injunctive relief for trademark counterfeiting and infringement, false designation of origin under the Lanham Act, common law

unfair competition; 15 U.S.C. § 1051 *et seq.*; and copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq.*

7.      This Court has subject matter jurisdiction pursuant to 17 U.S.C. §§ 101 *et seq.*, 15 U.S.C. §§ 1114 and 1125(a), and 28 U.S.C. §§ 1331, 1338(a) & (b).

8.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the state law claims, because the claims are so related to the trademark and copyright claims in this action over which this Court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

9.      Defendants are subject to personal jurisdiction in this District because they target business activities towards consumers in the State of Florida through their advertisement and promotion of pirated ABS-CBN copyrighted works via their unauthorized Internet-based content distribution services, including through the use of ABS-CBN's trademarks. Defendants' respective accessible websites operating under the Subject Domain Names are accessible in this District and Defendants infringe ABS-CBN's intellectual property rights in this District. Finally, Defendants cause harm to ABS-CBN's business within this District by diverting customers in this District and within the State of Florida to their unauthorized Internet-based content distribution services through, at least, the websites operating under the Subject Domain Names.

10.     Venue is proper in this Court pursuant 28 U.S.C. § 1391(b) because Defendants are, on information and belief, non-resident aliens likely residing in the Philippines, and thus may be sued in "any judicial district in which any defendant is subject to the Court's personal jurisdiction with respect to such an action,' as set forth above. Venue is also proper in this district pursuant to 28 U.S.C. § 1391(c) because a "defendant not resident in the United States may be sued in any judicial district." Finally, Venue is proper in this Court pursuant to 28 U.S.C.

§ 1400(a), which states that "civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights… may be instituted in the district in which the defendant or his agent resides or may be found." Defendants may be found in this district, as they are subject to personal jurisdiction herein.

## THE PLAINTIFFS

11.     ABS-CBN Corporation is a public Philippines corporation.

12.     ABS-CBN Film Productions, Inc. is a wholly-owned subsidiary of ABS-CBN Corporation.

13.     ABS-CBN International Corporation is a wholly-owned subsidiary of ABS-CBN Corporation.

14.     Plaintiff, ABS-CBN International Corporation, is, and at all times relevant hereto has been, the registered owner of the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "ABS-CBN Registered Marks"):

| Trademark | Registration Number | Registration Date | Class / Services |
|---|---|---|---|
| **ABS-CBN** | 2,334,131 | March 28, 2000 | IC 038 – television broadcasting services via satellite and cable |
| **THE FILIPINO CHANNEL** | 1,994,383 | Aug. 20, 1996 | IC 038 – Cable television broadcast IC 041 – television show production and programming. |
| **TFC** | 3,733,072 | Jan. 5, 2010 | IC 038 – Cable television broadcast IC 041 – television show production and programming. |

The ABS-CBN Registered Marks are used in conjunction with high quality services in the categories identified above. True and correct copies of the Certificates of Registration for the ABS-CBN Registered Marks are attached hereto as Exhibit "1."

15.     The ABS-CBN Registered Marks have been used in interstate commerce for many years to identify and distinguish ABS-CBN's high quality services, including, but not limited to, broadcast distribution services, for an extended period of time and serve as a symbols of ABS-CBN's quality, reputation, and goodwill.

16.     The ABS-CBN Registered Marks have never been assigned or licensed to the Defendants in this matter.

17.     The ABS-CBN Registered Marks are symbols of ABS-CBN's quality, reputation, and goodwill and have never been abandoned.

18.     ABS-CBN International Corporation is also, and at all times relevant hereto has been, the owner of all rights in and to the following common law trademark (the "ABS-CBN Common Law Trademark"):

| Trademark |
|---|
|  |

19.     The ABS-CBN Common Law Trademark is used in conjunction with high quality products and services, including broadcasting distribution services.

20.     The ABS-CBN Common Law Trademark has been used in interstate commerce for many years to identify and distinguish ABS-CBN's high quality broadcasting distribution services and serves as a symbol of ABS-CBN's quality, reputation, and goodwill.

6

21.     The ABS-CBN Common Law Trademark has never been assigned or licensed to the Defendants in this matter.

22.     The ABS-CBN Common Law Trademark is a symbol of ABS-CBN's quality, reputation, and goodwill and has never been abandoned.

23.     Together, the ABS-CBN Registered Marks and the ABS-CBN Common Law trademark are referred to herein as the "ABS-CBN Marks." ABS-CBN Corporation and ABS-CBN Film Productions, Inc. share exclusive rights in and to the ABS-CBN Marks with ABS-CBN International Corporation. Moreover, ABS-CBN Corporation and ABS-CBN Film Productions, Inc. are licensed to use and enforce the ABS-CBN Marks.

24.     ABS-CBN Corporation is the owner of the copyrights registered in the United States of America [the "Registered Copyrighted TV Shows"] in and to the TV shows specifically identified in Exhibit 2.

25.     ABS-CBN Film Productions, Inc. is the owner of the copyrights registered in the United States of America [the "Registered Copyrighted Movies"] in and to the Movies specifically identified in Exhibit 2.

26.     Moreover ABS-CBN Corporation is the owner of the copyrights in and to the other TV shows and movies identified in Exhibit "3" [the "Unregistered Copyrighted Works," together with the "Registered Copyrighted TV Shows" and "Registered Copyrighted Movies" are referred to collectively as the "Copyrighted Works"]. ABS-CBN Corporation, ABS-CBN International Corporation, and ABS-CBN Film Productions, Inc. all share exclusive rights in and to the Copyrighted Works. Moreover, ABS-CBN Corporation, ABS-CBN International Corporation, and ABS-CBN Film Productions, Inc. are all licensed to distribute, perform, and enforce their rights to the Copyrighted Works.

27.     ABS-CBN is the largest media and entertainment company in the Philippines. All of ABS-CBN's TV shows and movies are initially produced in the Philippines and then aired through its broadcast facilities or regional theaters in the Philippines.  Simultaneous with, or after that original broadcast, ABS-CBN's Filipino-centric content is then distributed throughout the world via customer-paid subscriptions, including through numerous cable companies' premium channels and telecom provider partnerships, such as with DirecTV, Time Warner Cable, Cox Communications, Comcast, AT&T, Verizon Services Corp., Braintree Cable, Cablevision, CC Communications, Centurytel, Champion Broadband, Charter, Duncan Cable TV, En-Touch, Frontier Communications, GCI Cable, Golden Rain Foundation, Groton Utilities, Hawaiian Telecom, ICable, KPU CommVision, MCV, MTA Communications, Norwood Light Dept., OpenBand Media, OSN, Phonoscope, Rainier Cable TV, RCN, Rogers, San Bruno Cable, Service Electric, Shaw, Starhub, Summit Broadband, SureWest, Tacoma Public Utilities, TVMax, Wave Broadband, Windjammer Cable, Zito Media, and many more.

28.     In addition, ABS-CBN's content is distributed by ABS-CBN through Internet subscription services, such as TFC.TV and IWANTV.COM.PH, as well as through their own 24-hour cable and satellite service TFC (The Filipino Channel) and TFC IPTV, which offers Pay-Per-View programming.  Most recently, on July 15, 2014, ABS-CBN launched its new TFC.TV design.  The redesigned portal is meant to provide its customers with improved navigation and easier access to the latest ABS-CBN shows and content.  In addition, it also includes a new Premium subscription package, which includes over 160+ Entertainment shows, 50+ News shows, 8+ Live shows, and 300+ Movies.

29.     ABS-CBN has expended substantial time, money, and other resources developing, advertising, and promoting the ABS-CBN Marks and Copyrighted Works.

30.     As a result of ABS-CBN's efforts, members of the consuming public readily identify services and content bearing the ABS-CBN Marks and promoted under the ABS-CBN Marks as high quality broadcasting services and content.

31.     Genuine and authorized ABS-CBN services and content are widely legitimately advertised, promoted, and distributed by ABS-CBN and its authorized partners. Over the course of the past five to seven years, visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing has become increasingly important to ABS-CBN's overall marketing and consumer education efforts. Thus, ABS-CBN expends significant monetary resources on Internet marketing and consumer education, including search engine optimization ("SEO") strategies. Those strategies allow ABS-CBN and its authorized partners to fairly and legitimately educate consumers about the value associated with the ABS-CBN brand and the content promoted thereunder.

32.     ABS-CBN creates and distributes content serving the worldwide Filipino community.  This includes the populace of the Philippines, estimated at 92.3 million persons, as well as the substantial overseas community, which is estimated at between 10.5 million and 13.5 million persons.  *See* http://www.census.gov.ph/; http://en.wikipedia.org/wiki/Overseas_Filipino. Countries with significant resident Filipino populations overseas include:  United States (3,494,281 persons); Saudi Arabia (1,267,658); UAE (931,562); Canada (852,401); Malaysia (686,547); Australia (391,705); Japan (243,136); United Kingdom (218,777); Kuwait (213,638); Qatar (200,016); Hong Kong (195,128); Singapore (184,498); and Italy (172,148).  *Id.*; *see also* Commission on Filipinos Overseas, *Stock Estimate of Overseas Filipinos* (as of Dec. 2012) (http://cfo.gov.ph/images/stories/pdf/2012_Stock_Estimate_of_Filipinos_Overseas.pdf).

33.     The United States hosts the largest population of Filipinos outside the Philippines. *Id.*  Filipinos are estimated by the U.S. State Department to be the second-largest Asian-American group in the country.  *See* http://en.wikipedia.org/wiki/Overseas_Filipino; U.S. Department of State, *U.S. Relations With the Philippines, Bureau of East Asian and Pacific Affairs Fact Sheet* (Jan. 31, 2014) (http://www.state.gov/r/pa/ei/bgn/2794.htm).  In addition, Tagalog is the fifth most spoken language in the U.S.  *See* http://en.wikipedia.org/wiki/Overseas_Filipino.  Moreover, Florida is the state with the ninth largest Filipino American population. *See* http://en.wikiedia.org/wiki/Demographics_of_Filipino_Americans. Florida is a critical market in the United States for ABS-CBN's business given the size of the State's Filipino community.

## THE DEFENDANTS

34.     Defendants operate through domain names registered with registrars in multiple countries and are comprised of individuals, partnerships and/or business entities of unknown makeup, which, upon information and belief, reside and/or operate in the Philippines or other foreign jurisdictions. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).  Defendants' websites operating under the Subject Domain Names are fully accessible in this District and throughout the United States of America.

35.     Upon information and belief, Defendants use aliases in conjunction with the operation of their businesses.

36.     ABS-CBN is presently unaware of the true names of Does 1-100, although they are generally identified as the managing agents and/or co-conspirators of Defendants. Defendants hide their identity through the use of "proxy" or "privacy" registrations for the domains at issue in order to prevent their identification, or, it is believed, have provided false information in their

domain registration, in violation of registrar policies. ABS-CBN will amend this Complaint upon discovery of the identities of such fictitious Defendants.

37.     On information and belief, Defendants are directly and personally contributing to, inducing, and engaging in trademark and copyright infringement, as alleged herein.

38.     On information and belief, Defendants may be all part of the same copying and distribution network. On information and belief, Defendants may be all part of the same distribution chain. For instance, Defendant 1 - freepinoychannel.com and Defendant 3 - pinoymovie.to have the same watermark of 'buhaypirata.net' on their respective websites. *See* Exhibit 5 attached hereto.

39.     Defendants are part of an ongoing scheme to create and maintain an illegal online distribution network of ABS-CBN's and others' intellectual properties which (i) confuses consumers as to the source of Defendants' infringing content and the legitimacy of their distribution service and (ii) expands the marketplace for illegal distribution services of pirated content while shrinking the legitimate marketplace for genuine distribution services of ABS-CBN's Copyrighted Works. The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill associated with the ABS-CBN name and associated trademarks, as well as the destruction of the legitimate market sector in which it operates.

40.     Defendants are the past and present conscious forces behind the operation of, at least, the Subject Domain Names.

41.     Upon information and belief, Defendants directly engage in unfair competition with ABS-CBN by (i) advertising, offering for distribution, promoting, and performing ABS-CBN's Copyrighted Works without authorization under counterfeits and infringements of one or more of ABS-CBN's trademarks to consumers within the United States and within this district

through multiple fully accessible websites operating under the Subject Domain Names and additional domains and websites not yet known to ABS-CBN and (ii) creating and maintaining an illegal marketplace enterprise for the purpose of diverting business from legitimate distribution services of the Copyrighted Works offered by ABS-CBN and its partners. Defendants have purposefully directed some portion of their illegal activities towards consumers in the State of Florida through the advertisement, offers to perform and performance of ABS-CBN's Copyrighted Works in the State. Defendants' websites are accessible in the Southern State of Florida and infringements of ABS-CBN's intellectual property are viewable thereon in the Southern District of Florida.

42.     On information and belief, Defendants have registered, established, or purchased, and maintained their respective Subject Domain Names, and the websites operating thereunder. On information and belief, several Defendants have anonymously registered and maintained some of the Subject Domain Names for the sole purpose of engaging in illegal activities.

43.     On information and belief, Defendants will continue to register, transfer, and/or acquire new domain names for the purpose of infringing ABS-CBN's trademarks and copyrights unless preliminarily and permanently enjoined. Moreover, on information and belief, Defendants will continue to maintain and grow their illegal distribution service network at ABS-CBN's expense unless preliminarily and permanently enjoined.

44.     Defendants' entire Internet-based website businesses amount to nothing more than illegal operations established and operated in order to infringe the intellectual property rights of ABS-CBN and others.

45.     Defendants' business names (*i.e.*, the Subject Domain Names and any other domain names used in connection with infringing ABS-CBN's trademarks and copyrights), are

essential components of Defendants' infringing activities.  The Subject Domain Names themselves are a significant part of the means by which Defendants further their infringing scheme and cause harm to ABS-CBN in that they cause and effect the infringement as described below. Moreover, Defendants are using ABS-CBN's famous name, trademarks, and Copyrighted Works to drive Internet consumer traffic to their websites operating under the Subject Domain Names, thus increasing the value of the Subject Domain Names and decreasing the size and value of ABS-CBN's legitimate common marketplace at ABS-CBN's expense.

## FACTUAL ALLEGATIONS

*A.*     ***Defendants' Domains and Associated Websites.***

46.     On information and belief, and at all times relevant hereto, Defendants in this action have had full knowledge of ABS-CBN's ownership of the ABS-CBN Marks and the Copyrighted Works, including its exclusive rights to use, perform, distribute, and license such intellectual property and the goodwill associated therewith.

47.     Defendants advertise ABS-CBN's Copyrighted Works to the public, including through the use of ABS-CBN's trademarks.  *See* Exhibits 3 and 4.  Defendants use the ABS-CBN Marks, without authorization, to attract consumer traffic to their websites and promote the infringing performances of the Copyrighted Works available thereon.

48.     ABS-CBN's representatives have viewed the infringements of the ABS-CBN Marks as well as infringements of ABS-CBN's Copyrighted Works on Defendants' websites in the Southern District of Florida.

49.     Further, Defendants use the ABS-CBN Marks, without authorization, to falsely suggest the infringing video content embedded on the websites for streaming is authorized, genuine content approved, endorsed, and sponsored by the ABS-CBN.  *See* Exhibits 3 and 4.

50.     Defendants' websites stream many of ABS-CBN's Copyrighted Works.  *See* Exhibits 3 and 4.

51.     On information and belief, Defendants' streaming of the video content also enables users to copy the TV shows and movies.

52.     On information and belief, Defendants' websites are "closed websites," meaning that they do not allow users to make additions or changes to the websites, such that the content streamed through the websites can only be provided by the website's operators and not uploaded by viewers.  On information and belief, the operators of Defendants' websites also insert the links provided on the website through which users view ABS-CBN's video content in a player window on the website.  When a user clicks on the link to one of ABS-CBN's TV shows or movies, Defendants' websites then stream the full-length version of the video.  This includes, but is not limited to, the ABS-CBN's TV shows and movies identified in Exhibits 2, 3, and 4.

53.     On information and belief, the large inventory of popular entertainment content available on Defendants' websites, including full-length copies of daily programming and archived shows – all available at the click of a button and often made available within minutes or hours of the original broadcast – is provided in order to attract users to the infringing content.

54.     Defendants' Internet-based website businesses are illegal operations, infringing on the intellectual property rights of ABS-CBN through their distribution and performance of ABS-CBN's Copyrighted Works and using the ABS-CBN Marks to promote, advertise, and distribute such content.  On information and belief, Defendants are using identical copies of ABS-CBN's trademarks for different quality services. ABS-CBN has extensively and continuously used the ABS-CBN Marks before Defendants began offering counterfeit and confusingly similar imitations of ABS-CBN's distribution services. The net effect of Defendants'

actions will cause confusion of consumers at the time of initial interest and during the use of the Defendants' illegal distribution services on their respective websites, who will believe Defendants' websites are legitimate, authorized distributors or are authorized and/or approved by ABS-CBN.

55.     On information and belief, Defendants operate websites that serve only one purpose – to function as commercial online hubs for publicly providing performances of popular copyrighted content, including many of ABS-CBN's copyrighted works, over the Internet to many thousands of users, without authorization or license. Defendants effect this illegal scheme, in part, through the draw to consumers of ABS-CBN's Marks on the websites, and in the meta tags in the source code of their websites in order to achieve higher rankings in search engine results.

56.     Defendants are infringing ABS-CBN's trademarks through their copying, use, promotion and/or performance of ABS-CBN's Copyrighted Works under the ABS-CBN Marks on the fully accessible Internet websites operating under the Subject Domain Names

57.     Defendants are using counterfeits of ABS-CBN's famous name and the ABS-CBN Marks in order to make their illegal websites distributing pirated copies of ABS-CBN's Copyrighted Works appear more relevant and attractive to search engines across an array of search terms. By their actions, Defendants have created an illegal marketplace operating in parallel to the legitimate marketplace for genuine ABS-CBN services and content. Defendants are causing concurrent and indivisible harm to ABS-CBN and the consuming public by (i) depriving ABS-CBN of its right to fairly compete for space within search engine results and reducing the visibility of ABS-CBN's genuine services on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with the ABS-CBN Marks, (iii)

increasing ABS-CBN's overall cost to market its content and services and educate consumers about its brand via the Internet, and (iv) maintaining an illegal marketplace enterprise which perpetuates the ability of Defendants and future entrants to that marketplace to confuse consumers and harm ABS-CBN with impunity.

58.    On information and belief, Defendants are concurrently conducting and targeting their counterfeiting and infringing activities towards consumers and causing harm, within this district and elsewhere throughout the United States. As a result, Defendants are defrauding ABS-CBN and the consuming public for Defendants' benefit.

59.    Defendants' use of the ABS-CBN Marks and performances of the Copyrighted Works are without ABS-CBN's consent or authorization.

60.    Defendants are engaging in the above-described illegal counterfeiting and infringement activities knowingly and intentionally or with reckless disregard or willful blindness to ABS-CBN's intellectual property rights for the purpose of trading on ABS-CBN's goodwill and reputation. If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, ABS-CBN and the consuming public will continue to be harmed.

61.    Defendants' above-identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers and the public before, during, and after their use of the Defendants' illegal content distribution services. Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive customers and the public into believing there is a connection or association between ABS-CBN and Defendants, which there is not.

62.    On information and belief and based on publically available sources, by advertising, promoting and performing the Copyrighted Works, and encouraging, facilitating and

16

assisting in the viewing and copying of the TV shows and movies, Defendants' websites attract many thousands of page views each day.

63.     On information and belief, the infringement-driven traffic increases the volume of online advertising impressions and transactions, and thereby increases online advertising revenues and enables Defendants to charge advertisers higher rates, and reap significant profits thereby.  Moreover, the wrongfully obtained consumer traffic increases the value of the Subject Domain Names.  In these ways, the Defendants' business model critically depends on attracting users to view ABS-CBN's highly-valued copyrighted works.

64.     On information and belief, Defendants derive revenue from ad impressions, and the sale of highly valuable user analytic data, from and to the ad services that are operating on their respective websites.

65.     Defendants infringe, and induce, cause and/or materially contribute to the infringing activity of their users by promoting, through the text of the website, the presence and availability of copies of ABS-CBN's Copyrighted Works.  *See* Exhibits  3 and 4.

66.     Defendants infringe, and induce, cause and/or materially contribute to the infringing activity of their users by promoting, through the use of ABS-CBN's trademarks and specific identification of shows and movies as ABS-CBN's, the presence and availability of copies of ABS-CBN's Copyrighted Works.  *See* Exhibits 3, 4.

67.     On information and belief, Defendants infringe, and induce, cause and/or materially contribute to the infringing activity of their users by promoting, through meta tags (aka "Keywords") designed to increase their respective website's relevance to queries for ABS-CBN's content in search engines and thus the number of people who click through to the websites, the presence and availability of copies of ABS-CBN's content.

68.     Defendants infringe, and induce, cause and/or materially contribute to the infringing activity of their users by frequently updating their inventory of content, often within minutes or hours of the broadcast in the Philippines, in order to tap into the known market for pirated Filipino-centric content and constantly promote to consumers the presence and availability of copies of ABS-CBN's Copyrighted Works, including the latest episodes and movies currently in theaters.

69.     Because Defendants cause the infringed content to be displayed on their websites and be streamed, they could stop the infringement at any point.

70.     However, Defendants do not implement any means to prevent infringement because to do so would defeat the very purpose for which the Subject Domain Names and associated websites exist – *i.e.*, to provide copyrighted TV shows and movies with Filipino content by infringing upon the trademarks of the largest media company in the Philippines.

71.     Defendants have actual and constructive knowledge, or should have knowledge, of their and their users' infringement of ABS-CBN's copyrighted works and trademarks for at least the reasons that:  (i) they insert and provide daily links to, organize by show title, and perform the infringing content for users; (ii) they advertise and promote the content, including through the use of ABS-CBN's Marks, on the websites and through search engine optimization and meta tags; (iii) as the largest media and entertainment company in the Philippines, ABS-CBN's Copyrighted Works are highly popular in Filipino communities and Defendants profit as a direct result of broadcasting that content.

72.     ABS-CBN has no adequate remedy at law.

73.     ABS-CBN is suffering irreparable and indivisible injury and has suffered substantial damages as a result of Defendants' unauthorized and unlawful use of the ABS-CBN

Marks and Copyrighted Works. If Defendants' counterfeiting and infringing activities and their illegal marketplace enterprise are not preliminarily and permanently enjoined by this Court, ABS-CBN and the consuming public will continue to be harmed.

74.     The harm and damage sustained by ABS-CBN has been directly and proximately caused by Defendants' infringing activities and by the creation, maintenance, and very existence of Defendants' illegal marketplace.

## CLAIMS FOR RELIEF

### Count One -- Trademark Counterfeiting and Infringement
### (Against All Defendants)

75.     ABS-CBN repeats and re-alleges every allegation contained in paragraphs 1 through 74 as though fully set forth herein.

76.     This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeits, copies and/or colorable imitations of the ABS-CBN Marks on their websites, which facilitate consumers' access to infringements of ABS-CBN's Copyrighted Works (the "pirated content").

77.     Specifically, Defendants are continually promoting and otherwise advertising their illegal broadcast distribution service using the ABS-CBN Marks, without authorization. *See* Exhibits 3 and 4.

78.     Defendants' indivisible and concurrent counterfeiting and infringing use of the ABS-CBN Marks is likely to cause and actually is causing confusion, mistake, and deception among members of the general public as to the origin and quality of the pirated content as well as the legitimacy of Defendants' illegal broadcast distribution service.

79.     Defendants' unlawful actions have individually and jointly caused and are continuing to cause unquantifiable and irreparable harm and unquantifiable damages to ABS-CBN and are unjustly enriching Defendants at ABS-CBN's expense.

80.     Defendants' above-described illegal actions constitute counterfeiting and infringement of the ABS-CBN Marks in violation of ABS-CBN's rights under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

81.     ABS-CBN has suffered and will continue to suffer irreparable injury due to Defendants' above described activities if Defendants are not temporarily, preliminarily and permanently enjoined.

**Count Two -- False Designation of Origin Pursuant to § 43(a) of the Lanham Act**
**(Against All Defendants)**

82.     ABS-CBN repeats and re-alleges every allegation contained in paragraphs 1 through 81 as though fully set forth herein.

83.     Defendants' advertisement and promotion of their illegal distribution services for the pirated content is being conducted using exact copies of the ABS-CBN Marks and are widely advertised and promoted throughout the United States, including within many of ABS-CBN's important business markets, such as the State of Florida.

84.     Defendants are using the ABS-CBN Marks to advertise and promote their illegal distribution service for the pirated content in violation of ABS-CBN's intellectual property rights and intentionally confuse consumers into believing the pirated content and broadcast distribution services are sponsored and endorsed by ABS-CBN.  *See* Exhibits 3 and 4.  Defendants' unauthorized use of the ABS-CBN Marks is designed to falsely suggest that their activities are sponsored and/or endorsed by ABS-CBN.   On information and belief, Defendants' unlawful use of the ABS-CBN Marks is designed to make their services appear legitimate in order to attract a larger number of viewers which results in larger advertising revenues for the Defendants.

85.     Defendants, on information and belief, have used in connection with their advertisement and promotion of their illegal broadcast distribution service, false designations of origin and false descriptions and representations, including words or symbols which tend to falsely describe or represent such distribution services to the general viewing public with full

knowledge of the falsity of such designations of origin and such descriptions and representations, all to ABS-CBN's detriment.

86.    Defendants have authorized infringing uses of the ABS-CBN Marks in the advertisement and promotion of their illegal broadcast distribution service for pirated content. Defendants have misrepresented to members of the consuming public that the pirated content to which Defendants are facilitating access to is genuine and authorized content of ABS-CBN, and that their broadcast distribution services for such content are sponsored and/or endorsed by ABS-CBN.

87.    Additionally, Defendants are using counterfeits and infringements of the ABS-CBN Marks in order to unfairly compete with ABS-CBN and others for space within search engine organic results, thereby jointly depriving ABS-CBN of a valuable marketing tool which would otherwise be available to ABS-CBN and reducing the visibility of ABS-CBN's legitimate, genuine content on the World Wide Web.

88.    Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

89.    ABS-CBN has no adequate remedy at law, and has sustained injury and damages caused by Defendants' conduct.  Absent an entry of an injunction by this Court, ABS-CBN will continue to suffer irreparable injury to their goodwill and business reputation, as well as monetary damages.

**Count Three -- Common Law Unfair Competition**
**(Against All Defendants)**

90.    ABS-CBN repeats and re-alleges every allegation contained in paragraphs 1 through 89 as though fully set forth herein.

91.     This is an action against Defendants based on their (i) promotion, advertisement, distribution, and facilitation of access to the pirated content using marks which are identical, both visually and phonetically, to the ABS-CBN Marks and the (ii) creation and maintenance of an illegal ongoing forum in which viewers may access public performances of and copy the pirated content, operating parallel to ABS-CBN's own Internet pay subscription service through which ABS-CBN promotes its genuine content, in violation of Florida's common law of unfair competition.

92.     Specifically, and as described above, Defendants are promoting, advertising and otherwise facilitating access to and copying of the pirated content using the ABS-CBN Marks for the purpose of creating a veneer of legitimacy for Defendants' operation.  *See* Exhibits 3 and 4. Defendants are using counterfeits and infringements of the ABS-CBN Marks to unfairly compete with ABS-CBN and others for (i) space in search engine results across an array of search terms and (ii) visibility on the World Wide Web for the purpose of earning a profit at the ABS-CBN's expense.

93.     ABS-CBN is suffering damages and irreparable injury as a result of Defendants' wrongful actions.

### Count Four -- Direct Infringement of Copyright
### (Against Defendants 1-8)

94.     ABS-CBN repeats and realleges every allegation contained in paragraphs 1 through 93 as if fully set forth herein.

95.     ABS-CBN Corporation has registered and owns the copyrights in and to TV shows specifically identified in Exhibit 2. ABS-CBN Film Productions, Inc. has registered and owns the copyrights in and to the Movies specifically identified in Exhibit 2.

96.     Moreover, ABS-CBN Corporation is the owner of the unregistered copyrights in and to numerous TV shows and movies first produced and aired in the Philippines, a signatory to the Berne Convention, including but not limited to the works identified in Exhibits 3 and 4. Defendants have copied, performed and distributed these works through their websites as part of a large scale and ongoing daily illegal enterprise. This illegal enterprise, without injunctive relief, will continue through the Subject Domain Names as well as through other domains owned now or in the future by the Defendants.

97.     Defendants are directly liable for infringing ABS-CBN's copyrighted works under the Copyright Act, 17 U.S.C. §§ 106(1), (3), (4) & 501.

98.     Without authorization from any Plaintiff, or right under law, Defendants have directly infringed ABS-CBN's Copyrighted Works by their performance and distribution of those works used by Defendants to cause and effect the copying, performance and/or distribution of those works through their websites to public users worldwide.  *See* Exhibits 3 and 4.

99.     Defendants have actual and constructive knowledge, or should have knowledge, of their infringement of ABS-CBN's copyrighted works for at least the reasons that:  (i) they insert and provide links to, organize by show title, and perform the infringing content, and do so for the purpose of users' viewing of pirated content; (ii) they advertise and promote the content, including through the use of ABS-CBN's marks, on their websites,  and through search engine optimization and meta tags; (iii) as the largest media and entertainment company in the Philippines, ABS-CBN's content is highly popular in Filipino communities and  Defendants profit as a direct result of broadcasting that content.

100.     The foregoing acts of infringement have been willful, intentional, and purposeful, in disregard of and indifferent to ABS-CBN's rights.

101.    As a direct and proximate result of  Defendants' infringement of ABS-CBN's exclusive rights, ABS-CBN is entitled to actual damages as well as Defendants' profits pursuant to 17 U.S.C. § 504(b).

102.    Defendants' unlawful actions have individually and jointly caused and are continuing to cause unquantifiable and irreparable harm and unquantifiable damages to ABS-CBN and are unjustly enriching Defendants at ABS-CBN's expense.

103.    Alternatively, ABS-CBN is entitled to the maximum statutory damages in the amount of $150,000.00 per infringement, pursuant to 17 U.S.C. § 504(c), or such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

104.    ABS-CBN is further entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

105.    In addition, ABS-CBN is entitled to injunctive relief, as set forth below, because of the continuing infringement of many of ABS-CBN's Copyrighted Works and because of the significant threat of future infringement as evidenced herein.

### Count Five -- Contributory Infringement of Copyright
### (Against Defendants 1-8)

106.    ABS-CBN repeats and realleges every allegation contained in paragraphs 1 through 105 as if fully set forth herein.

107.    On information and belief, users of Defendants' websites operating under the Subject Domain Names have directly infringed ABS-CBN's copyrights, including those copyrighted works identified in Exhibits 2, 3, and 4, by performing, copying and/or distributing works owned by ABS-CBN, without authorization, or right under law, in violation of the Copyright Act, 17 U.S.C. §§ 106(1), (3), (4) & 501.

25

108.    Defendants are contributarily liable for its users' direct infringement of ABS-CBN's copyrighted works in violation of the Copyright Act.

109.    Defendants have actual and constructive knowledge, or should have knowledge, of their users' infringement of ABS-CBN's copyrighted works for at least the reasons that: (i) they insert and provide links to, organize by show title, and perform the infringing content, and do so for the purpose of users' viewing; (ii) they advertise and promote the content, including through the use of ABS-CBN's Marks, on the websites and through search engine optimization and meta tags; and (iii) as the largest media and entertainment company in the Philippines, ABS-CBN's content is highly popular in Filipino communities and  Defendants profit as a direct result of broadcasting that content.

110.    Defendants induce, cause and/or materially contribute to the infringing activity of their users for all the reasons stated herein, including but not limited to because Defendants: (i) advertise the presence and availability of "free" Filipino content; (ii) promote the presence and availability of Filipino content and, specifically, ABS-CBN's content, through (a) the text on their websites, (b) through the use of ABS-CBN's trademarks and specific identification of shows and movies as ABS-CBN's, and (c) search engine optimization and meta tags; (iii) display pirated content and organize that content for ready access through menus and folders by show title; (iv) insert the links on their websites directing users where to view the content; (v) stream the infringing content to users for viewing; (vi) frequently update their inventory of content, often within minutes or hours of the broadcast in the Philippines, in order to tap into the known market for pirate Filipino-centric content and constantly to feed the consumers' desire for that content; (vii); enable users to copy the works; and (viii) because by promoting and providing the

content, Defendants drive more traffic to their websites to increase the profits they reaps from advertising and other revenue.

111.    Defendants have the right and ability to supervise and control their websites and the users' infringing activity as set forth above.  Because Defendants cause the infringed content to be loaded on their "closed websites" and be streamed on their websites, they could stop the infringement at any point.

112.    Defendants derive a financial benefit directly attributable to their users' infringement of ABS-CBN's copyrights.  Popular, copyrighted works act as a draw that attracts users and advertising to the Subject Domain Names and associated websites, resulting in revenues from advertising impressions tied to page views and other sources.

113.    Defendants have taken affirmative steps to foster infringement by creating their respective websites and streaming the content, viewed through video player embedded theron, with the object of promoting the illegal viewing of ABS-CBN's copyrighted TV shows and movies by providing detailed programming directories, with the look and feel of television guides; presentation of the TV shows and movies in association with ABS-CBN as the television network and trademarked titles associated with a telecast; and by promoting the websites and their  pirated content through the websites.  *See* Exhibit 3 and 4.

114.    Defendants do not merely respond to user requests in a passive, content-neutral, and automated manner.  To the contrary, as set forth above, they control the selection and provision of the content and are the causes making that content available and accessible to their public users.  Without the active and material contributions from Defendants, the massive infringement complained of herein could not have taken place.

115.    Defendants target known demand for illegal access to and viewing of copyrighted works in this District and throughout the world.

116.    Defendants are the direct and proximate cause of the harm to ABS-CBN alleged herein.

117.    The foregoing acts of infringement by Defendants have been willful, intentional, and purposeful, in disregard of and indifferent to ABS-CBN's rights.

118.    Defendants' unlawful actions have individually and jointly caused and are continuing to cause unquantifiable and irreparable harm and unquantifiable damages to ABS-CBN and are unjustly enriching Defendants at ABS-CBN's expense.

119.    As a direct and proximate result of  Defendants' infringement of ABS-CBN's exclusive rights, ABS-CBN is entitled to actual damages as well as Defendants' profits pursuant to 17 U.S.C. § 504(b).

120.    Alternatively, ABS-CBN is entitled to the maximum statutory damages in the amount of $150,000.00 per infringement, pursuant to 17 U.S.C. § 504(c), or such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

121.    ABS-CBN is further entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

122.    In addition, ABS-CBN is entitled to injunctive relief, as set forth below, because of the continuing infringement of many of ABS-CBN's Copyrighted Works and because of the significant threat of future infringement as evidenced herein.

WHEREFORE, ABS-CBN demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief, jointly and severally, against Defendants as follows:

A.      Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116, 17 U.S.C. § 502(a), and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, including Internet search engines, Web hosts, domain-name registrars, and domain name registries and/or their administrators, from advertising, promoting, performing, copying, broadcasting, performing, and/or distributing any ABS-CBN copyrighted works and/or content that currently exists or which exists in the future; from infringing, counterfeiting, or diluting the ABS-CBN Marks, or any mark similar thereto, in connection with the advertisement, promotion, or distribution of pirated content, from using any logo, trade name or trademark or trade dress that may be calculated to falsely advertise the pirated content of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with ABS-CBN; from falsely representing themselves as being connected with ABS-CBN, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the public to believe any pirated content or services of Defendants are in any way endorsed by, approved by, and/or associated with ABS-CBN; from using any reproduction, counterfeit, infringement, copy or colorable imitation of the ABS-CBN Marks in connection with the publicity, promotion, advertising, or distribution of any pirated content by Defendants; from affixing, applying, annexing or using in connection with the promotion, distribution, or advertisement of any pirated content, a false description or representation, including words or other symbols tending to falsely describe or represent  Defendants' pirated content as being connected with ABS-CBN, or in any way endorsed by ABS-CBN; from engaging in search engine optimization strategies using colorable imitations of the ABS-CBN name or trademarks; and from otherwise unfairly competing with ABS-CBN.

B.      Entry of temporary, preliminary and permanent injunctions pursuant to 28 U.S.C §1651(a), The All Writs Act, enjoining Defendants and all third parties from creating, maintaining, operating, joining, participating in, including providing financial, technical or other support to, the World Wide Web based illegal marketplace used to copy, distribute, perform, advertise, or promote pirated content bearing counterfeits or infringements of the ABS-CBN Marks.

C.      Entry of an Order pursuant to 28 U.S.C §1651(a), The All Writs Act, that, upon ABS-CBN's request, those in privity with Defendants and those with notice of the injunction, including any Internet search engines, Web hosts, domain-name registrars, and domain name registries and/or their administrators that are provided with notice of the injunction, cease facilitating access to any or all domain names and websites through which Defendants engage in the (i) copying, distribution, performance, and promotion of pirated content or (ii) use the ABS-CBN Marks.

D.      Entry of an Order that, upon ABS-CBN's request, the top level domain (TLD) Registry(ies) for the Subject Domain Names or its administrators place the Subject Domain Names on Registry Hold status for the remainder of the registration period for any such domain names, thus removing it from the TLD zone files maintained by the Registries or its administrators which link the Subject Domain Names to the IP addresses where the associated website is hosted.

E.      Entry of an Order canceling or deleting, or, at ABS-CBN's election, transferring the Subject Domain Names and any other domain names used by Defendants to engage in their infringing activities at issue to ABS-CBN's control so that they may no longer be used for illegal purposes.

30

G.      Entry of an order requiring Defendants to account to and pay ABS-CBN for all profits and damages resulting from  Defendants' trademark counterfeiting and infringing activities and that the award to ABS-CBN be trebled, as provided for under 15 U.S.C. § 1117, or, at ABS-CBN's election with respect to Count I, that ABS-CBN be awarded statutory damages from Defendants in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used, as provided by 15 U.S.C. § 1117(c)(2) of the Lanham Act.

H.      Entry of an order requiring Defendants to pay ABS-CBN for all damages sustained by ABS-CBN in consequence of Defendants' copyright infringement together with appropriate interest thereon; that Defendants be required to account to ABS-CBN for, and disgorge to ABS-CBN, and to pay to ABS-CBN, all the gains, profits, savings and advantages realized by Defendants from its acts of copyright infringement descried above; ABS-CBN be awarded at its election, statutory damages within the provisions of 17 U.S.C. § 504(c), enhanced to reflect the willful nature of  Defendants' infringement, instead of an award of actual damages or profits, and be awarded its costs and disbursements incurred in this action, including reasonable attorneys' fees pursuant to 17 U.S.C. § 505.

I.      Entry of an order requiring Defendants to pay ABS-CBN's attorneys' fees and investigative fees, and full costs and disbursements in this action.

J.      Entry of an Order requiring all funds, up to and including the total amount of judgment, in payment accounts or advertising revenue accounts used in connection with the Subject Domain Names, and any other accounts, to be surrendered to ABS-CBN's in partial satisfaction of the monetary judgment entered herein.

K.      Entry of an order requiring Defendants to pay prejudgment interest according to law.

L.      Entry of an order for such other and further relief as the Court may deem proper

and just.

DATED: May 14, 2015.                      Respectfully submitted,

                                          STEPHEN M. GAFFIGAN, P.A.

                                          By: _____s:/*Stephen M. Gaffigan/*_____
                                          Stephen M. Gaffigan (Fla. Bar No. 025844)
                                          Virgilio Gigante (Fla. Bar No. 082635)
                                          Christine Ann Daley (Fla. Bar. No. 98482)
                                          401 East Las Olas Blvd., Suite 130-453
                                          Ft. Lauderdale, Florida 33301
                                          Telephone: (954) 767-4819
                                          Facsimile: (954) 767-4821
                                          E-mail: Stephen@smgpa.net
                                          E-mail: Leo@smgpa.net
                                          E-mail: Christine@smgpa.net

                                          Attorneys for Plaintiffs

**SCHEDULE A**
**DEFENDANTS BY NUMBER AND SUBJECT DOMAIN NAMES**

| Defendant Number | Subject Domain Name |
|---|---|
| 1 | freepinoychannel.com |
| 2 | lambingan.to |
| 3 | pinoymovie.to |
| 4 | pinoynetwork.to |
| 5 | pinoytambayan-replay.com |
| 6 | pnoytambayantv.com |
| 7 | tambaytayo.com |
| 8 | tvnijuan.net |
| 9 | phstream.com |
| 10 | streampinoy.info |
| 11 | tambayanatin.com |