**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 15-61002-CIV-DIMITROULEAS/SNOW

ABS-CBN CORPORATION, *et al.*,

       Plaintiff,

vs.

FREEPINOYCHANNEL.COM, *et al.*,

       Defendants.

_____/



# PLAINTIFFS' APPLICATION FOR ENTRY OF TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Stephen M. Gaffigan, P.A.
401 East Las Olas Blvd., Suite 130-453
Ft. Lauderdale, Florida 33301
Telephone: (954) 767-4819
Facsimile: (954) 767-4821

Plaintiffs, ABS-CBN Corporation, ABS-CBN Film Productions, Inc. d/b/a Star Cinema, and ABS-CBN International Corporation (collectively, "ABS-CBN" or Plaintiffs) hereby do apply, on an *ex parte* basis, for entry of a temporary restraining order and, upon expiration of the temporary restraining order, a preliminary injunction against Defendants, the Individuals, Partnerships and Unincorporated Associations Identified on Schedule "A" hereto and Does 1-100 (collectively "Defendants") pursuant to 15 U.S.C. § 1116, Fed. R. Civ. P. 65, and The All Writs Act, 28 U.S.C. § 1651(a). In support thereof, ABS-CBN submits the following Memorandum of Law.

## I.    INTRODUCTION

As alleged in ABS-CBN's Complaint, Defendants are knowingly and intentionally advertising, promoting, distributing, and performing ABS-CBN's copyrighted works for instant streaming and using ABS-CBN's trademarks without authorization through the Internet websites operating under the domain names identified on Schedule "A" attached hereto (the "Subject Domain Names").[1]

Defendants' unlawful activities have caused and will continue to cause ABS-CBN irreparable injury. Among other things, Defendants have (1) deprived ABS-CBN of its right to determine the manner in which its trademarks are presented to consumers; (2) defrauded consumers into thinking Defendants' broadcast distribution services for pirated versions of ABS-CBN's copyrighted works are authorized by ABS-CBN; (3) deceived the public as to ABS-CBN's sponsorship of and/or association with Defendants' illegal broadcast distribution services and the websites through which such content is performed, marketed, advertised, and distributed; (4) wrongfully traded and capitalized on ABS-CBN's reputation and goodwill and the commercial value of the ABS-CBN trademarks; and (5) wrongfully damaged ABS-CBN's ability to market its copyrighted works and distribution services and educate consumers about its brand via the Internet in a free and fair marketplace.

Moreover, Defendants are participating in the creation and/or maintenance of an illegal marketplace on the World Wide Web, the purposes of which are to (i) confuse consumers regarding the source of their content for profit and (ii) expand the marketplace for illegal

---

[1] Plaintiffs' Complaint alleges trademark counterfeiting and infringement, false designation of origin under the Lanham Act, and Common Law Unfair Competition against all Defendants, ECF No. [1]. However, Plaintiffs' Complaint alleges direct and contributory infringement of copyright against Defendants 1-8 only.

distribution services of pirated ABS-CBN content while shrinking the legitimate marketplace for ABS-CBN authorized distribution services. The natural and intended byproduct of Defendants' actions is the erosion of the overall legitimate marketplace in which ABS-CBN operates and the goodwill associated with the ABS-CBN name and marks. Defendants should not be permitted to continue their unlawful activities, which are causing ABS-CBN ongoing irreparable harm. Accordingly, ABS-CBN seeks entry of a temporary restraining order (i) prohibiting Defendants' wrongful use of ABS-CBN's trademarks and wrongful performances of ABS-CBN's copyrighted works and (ii) disabling Defendants' websites operating under the Subject Domain Names.

## II.    STATEMENT OF FACTS

### A.    ABS-CBN's Rights.

ABS-CBN Corporation is the owner of the registered copyrights in and to the TV shows identified in Exhibit 2 to the Complaint and ABS-CBN Film Productions, Inc. is the owner of the registered copyrights in and to the Movies identified in Exhibit 2 to the Complaint, ECF No. [1-3]. ABS-CBN Corporation is the owner of the unregistered copyrights in and to the movies and TV shows identified in Exhibits 3 and 4 of the Complaint, ECF Nos. [1-4] and [1-5]. Together, these works are referred to herein collectively as the "Copyrighted Works." ABS-CBN Corporation, ABS-CBN International Corporation, and ABS-CBN Film Productions, Inc. all share exclusive rights in and to the ABS-CBN Copyrighted Works. All of ABS-CBN's' Copyrighted Works are produced in the Philippines and then initially aired through its broadcast facilities in the Philippines. (See Declaration of Elisha J. Lawrence in Support of Plaintiffs' *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction ["Lawrence Decl."] ¶ 8.) Simultaneous with, or after, that original broadcast, ABS-CBN's Filipino-centric content is then distributed worldwide via customer-paid subscriptions, including through numerous cable companies' premium channels and telecom provider partnerships. (Id.) In addition, ABS-CBN's Copyrighted Works are distributed by ABS-CBN through Internet subscription services, such as TFC.TV and IWANTV.COM.PH, as well as through their own 24-hour cable and satellite service TFC (The Filipino Channel) and TFC IPTV, which offers Pay-Per-View programming. (Lawrence Decl. ¶ 10.)

ABS-CBN International Corporation is the owner of all rights in and to the federally registered trademarks (the "ABS-CBN Registered Trademarks") listed in Paragraph 5 and the

common law trademark (the "ABS-CBN Common Law Trademark") listed in paragraph 6 of the Declaration of Elisha J. Lawrence in Support of Plaintiffs' *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction (collectively, the "ABS-CBN Marks") which are used in connection with broadcasting distribution services of high quality television programing. (Lawrence Decl. ¶¶ 4-6, filed herewith; <u>see also</u> United States Trademark Registrations for the ABS-CBN Marks at issue [the "ABS-CBN Trademark Registrations"], attached as Exhibit 1 to the Complaint, ECF No. [1-2], incorporated herein by reference.) The ABS-CBN Marks are symbols of ABS-CBN's quality, reputation, and goodwill and have never been abandoned. (<u>See</u> Lawrence Decl. ¶ 9.) Moreover, ABS-CBN has expended substantial time, money, and other resources developing, advertising, and otherwise promoting its trademarks. (<u>Id.</u> at ¶¶ 7-11.)

Furthermore, ABS-CBN has extensively used, advertised, and promoted the ABS-CBN Marks in the United States in association with quality television programming and broadcasting distribution services, and has carefully monitored and policed the use of the ABS-CBN Marks. (Lawrence Decl. ¶¶ 7-11.) As a result of ABS-CBN's efforts, the ABS-CBN Marks have acquired fame in the consumer market. (<u>Id.</u>) The ABS-CBN Marks are among the most widely recognized trademarks in the Filipino consumer communities in the United States and the Philippines, and the trademarks have achieved secondary meaning. (<u>Id.</u>) The ABS-CBN Marks have come to symbolize the enormous goodwill of genuine ABS-CBN program distribution services throughout the United States. (<u>Id.</u>) At all times relevant hereto, Defendants have been aware of ABS-CBN's (a) ownership of the ABS-CBN Marks; (b) exclusive rights to use and license such Marks; and (c) substantial goodwill embodied in and favorable recognition for, the ABS-CBN Marks.

**B.    Defendants    Wrongfully    Reproduce,    Disseminate    and    Perform    ABS-CBN's Copyrighted Works.**

Defendants, via, at least, the Subject Domain Names, are currently infringing many of ABS-CBN's Copyrighted Works. Defendants provide links to performances of the Copyrighted Works on their websites operating under the Subject Domain Names. (*See* Exs. 3 and 4 of the Complaint, ECF No. [1-4] and [1-5].) When a user clicks on a link to one of ABS-CBN's copyrighted TV shows or movies, the Defendants' respective website then streams and performs the full-length version of the TV show or movie. (<u>See</u> Exs. 3 and 4 to the Complaint, ECF Nos.

[1-4] and [1-5].) This includes, but is not limited to, the ABS-CBN Copyrighted Works identified in Exhibits 2, 3, and 4 to the Complaint. (ECF Nos. [1-3], [1-4], and [1-5].)

Defendants stream the content which is performed through a viewer/player window within the websites themselves. It is believed that the Copyrighted Works are not provided by the websites' various users because Defendants' websites all appear to be closed and do not permit users to alter the content. (Declaration of Stephen M. Gaffigan in Support of Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction ["Gaffigan Decl."] ¶ 2, filed herewith.)

It is believed Defendants profit from the advertising revenue derived by driving users to the websites operating under the Subject Domain Names in order to access and view the pirated copies of ABS-CBN's Copyrighted Works. (Lawrence Decl. ¶ 18; Gaffigan Decl. ¶¶ 4-6 .) The large inventory of popular entertainment content available on Defendants' respective websites, including full-length copies of daily programming and archived shows – all available at the click of a button and often made available within very soon after the original broadcast, is designed to attract users to the infringing content and, thus, increase Defendants' profits from the advertisers who pay Defendants based on the number of views that the advertising receives. (Gaffigan Decl. ¶ 6.) By performing the Copyrighted Works, and encouraging, facilitating and assisting in the viewing and copying of the TV shows and movies, the Defendants' websites attract thousands of page views each day. (See Gaffigan Decl. ¶ 6.) The infringement-driven traffic increases the volume of online advertising impressions and transactions, and thereby increases revenues from the advertising services the Defendants use, and thus enables Defendants to charge advertisers higher rates. (Gaffigan Decl. ¶¶ 4-6.) Defendants also advertise the availability of the pirated content through their respective websites in order to drive traffic to the websites. (See Ex. 3 to the Complaint, ECF No. [1-4]).

Defendants have full knowledge of ABS-CBN's rights and their infringement thereof given their willful and blatant copying, streaming and downloading of ABS-CBN's content; their active inducement of infringement; their advertising of the content, including using ABS-CBN's trademarks; and the profits they reap as a direct result of performing ABS-CBN's Copyrighted Works.

Because Defendants' infringement is systematic, calculated, ongoing, and because ABS-CBN has no recourse but to apply to this Court for relief, injunctive relief is necessary to prevent

Defendants from infringing ABS-CBN's works through the current Subject Domain Names, as well as by simply registering new domain names and/or simply hopping to another service provider and recommencing their infringement.

### C. Defendants Wrongfully Use ABS-CBN's Trademarks in Connection With the Promotion and Advertisement of Counterfeit Services.

Defendants do not have, nor have they ever had, the right or authority to use the ABS-CBN Marks for any purpose. (See Lawrence Decl. ¶¶ 12-15.) However, despite their known lack of authority to do so, Defendants are advertising, distributing, and promoting their distribution services for performances of pirated versions of ABS-CBN's Copyrighted Works under counterfeit and infringing trademarks which are substantially indistinguishable from the ABS-CBN Marks ("Defendants' Services"). (See Lawrence Decl. ¶¶ 12-15; Gaffigan Decl. ¶¶ 2-6; see also relevant web page captures from Defendants' Internet websites operating under the Subject Domain Names displaying the ABS-CBN trademarks ["Defendants' Websites"] attached as Ex. 3 to the Complaint, ECF No. [1-4].)

ABS-CBN's representative, Elisha J. Lawrence ("Lawrence"), reviewed and visually inspected Defendants' websites operating under the Subject Domain Names, and determined the distribution services offered were unauthorized distribution services performing pirated copies of ABS-CBN's Copyrighted Works. (See Lawrence Decl. ¶¶ 13-15 and Exs. 1 and 3 of the Complaint, ABS-CBN's registered trademarks, and examples of Defendants' infringement of the ABS-CBN Marks, ECF Nos. [1-2] and [1-4].) Moreover, Ms. Lawrence reviewed ABS-CBN's contracts and confirmed that Defendants are not and never were entitled to broadcast or otherwise distribute the ABS-CBN copyrighted works offered. (Id.)

Section 45 of the Lanham Act defines a "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. Also, using the "ocular test" of direct comparison, courts have found that even marks that are slightly modified from the registered marks copied are to be considered counterfeit marks. See Fimab-Finanziaria Maglificio vs. Helio Import/Export, Inc., 601 F. Supp. 1, 2 (S.D. Fla. 1983). A comparison of the ABS-CBN Marks to the marks used by Defendants in connection with the promotion and distribution of Defendants' Services reveals the obvious counterfeit and infringing nature of Defendants' Services. (Compare ABS-CBN's Trademark Registrations, ECF No. [1-2] with Defendants' Websites, ECF Nos. [1-3] and [1-4].) Defendants' Services offered under counterfeits of the ABS-CBN Marks are being promoted, offered for distribution, and

distributed by Defendants to consumers within this district. (See Lawrence Decl. ¶¶ 12-15; Gaffigan Decl. ¶¶ 2-6; see also Defendants' Websites, ECF Nos. [1-4] and [1-5].)

Defendants are falsely representing to consumers that their broadcast distribution services are genuine, endorsed, and authorized by ABS-CBN. Ultimately, Defendants' Internet websites amount to nothing more than illegal operations, infringing on the intellectual property rights of ABS-CBN and others. The Subject Domain Names are used as the common names of Defendants and are a substantial part of the means by which Defendants further their scheme and cause harm to ABS-CBN.

### D. Defendants Unfairly Compete with ABS-CBN Through Search Engine Optimization Using Counterfeits of the ABS-CBN Marks.

Genuine ABS-CBN authorized distribution services are widely legitimately advertised, promoted, offered for sale, and discussed by ABS-CBN, its partners, and unrelated third parties via the Internet. (See Lawrence Decl. ¶ 16.) Over the course of the past seven years, visibility on the World Wide Web, particularly via Internet search engines such as Google, Yahoo!, and Bing, has become increasingly important to ABS-CBN's overall marketing and consumer education efforts. (See id. at ¶ 17.) Thus, ABS-CBN expends significant monetary resources on Internet marketing and consumer education regarding its content and services, including search engine optimization ("SEO") strategies, which allow ABS-CBN and others to fairly educate consumers about the value associated with the ABS-CBN brand and the content and services thereunder. (Id.)

Defendants, use unauthorized counterfeits of ABS-CBN's name and trademarks within the content of their websites in order to attract the automated eye of various search engines crawling the Internet looking for websites relevant to consumer searches for ABS-CBN related services, content, and information. (Lawrence Decl. ¶ 18.) By having illegally embedded the ABS-CBN Marks on their websites, Defendants are increasing the visibility of their respective websites on the Internet and decreases the visibility of genuine ABS-CBN branded services and programs on search engines such as Google, and driving more users their websites. (Id.) Specifically, at a minimum, Defendants use unauthorized counterfeits and infringements of ABS-CBN's name and trademarks within the content of their websites operating under the Subject Domain Names in order to attract the automated eye of various search engines crawling the Internet looking for websites relevant to consumer searches for ABS-CBN related content, services, and information. (See id. at ¶ 18.) The primary difference between what ABS-CBN and Defendants are doing, of course, is that ABS-CBN is doing so through the legal use of its

trademarks in which it has made a substantial economic investment, and Defendants are doing so through subterfuge and illegal behavior, including counterfeiting and infringing the ABS-CBN Marks, and helping to create and maintain an illegal marketplace by which they illegally distribute and perform ABS-CBN's copyrighted works and confuse consumers.

For purposes of this Application, ABS-CBN does not contend that it or any third party has the exclusive right to appear in any particular location in the results of any search engine across any particular array of search terms; however, ABS-CBN does contend that it has the right to fairly compete for visibility on the World Wide Web and search engine results space unfettered by unfair competition stemming from an illegal use of ABS-CBN's trademarks. ABS-CBN's right to fairly compete for the best Internet real estate and its reputation are being trampled by the combined efforts of Defendants.

## III.     ARGUMENT

### A.     A Temporary Restraining Order is Essential to Prevent Immediate Injury.

ABS-CBN is seeking entry of a temporary restraining order (i) prohibiting Defendants' further wrongful use of ABS-CBN's trademarks and (ii) disabling Defendants' websites operating under the Subject Domain Names during the pendency of this action. The requested relief is necessary to immediately stop Defendants' ongoing, intentional confusion of consumers and the associated irreparable harm occurring to ABS-CBN.

Rule 65(b) of the Federal Rules of Civil Procedure provides, in part, that a temporary restraining order may be granted without written or oral notice to the opposing party or that party's counsel where it clearly appears from the specific facts shown by affidavit ". . . that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Moreover, temporary restraining orders are available on an *ex parte* basis if the movant shows through an affidavit that there is a threat of intervening immediate, irreparable harm before the adverse party may be heard in opposition and the movant's attorney certifies in writing why notice should not be required. Fed. R. Civ. P. 65(b). (See Gaffigan Decl. ¶¶ 7-11 and Comp. Ex. D thereto, examples of website redirections.) As demonstrated herein, such irreparable and immediate injury will result to ABS-CBN if Defendants' wrongful activities are not immediately stopped by the issuance of a temporary restraining order.

Defendants herein fraudulently promote and advertise, offer to perform, and perform

ABS-CBN's copyrighted works using counterfeits and infringements of the ABS-CBN Marks via the websites operating under the Subject Domain Names. By their actions, Defendants are creating a false association in the minds of consumers between Defendants and ABS-CBN. Specifically, Defendants are wrongfully using counterfeits and infringements of the ABS-CBN Marks to promote and attract customers to their websites operating under the Subject Domain Names and to expand their illegal distribution service network. The entry of a temporary restraining order would serve to immediately stop Defendants from benefiting from their wrongful use of the ABS-CBN Marks and would preserve the status quo until such time as a hearing can be held. Thus, a temporary restraining order is appropriate. See Dell Inc. v. BelgiumDomains, LLC, Case No. 07-22674, 2007 WL 6862341, at *2 (S.D. Fla. Nov. 21, 2007) (finding *ex parte* relief more compelling where Defendants' scheme "is in electronic form and subject to quick, easy, untraceable destruction by Defendants.")

Absent a temporary restraining order, Defendants can significantly alter the status quo before the Court can determine the parties' respective rights. Specifically, the websites operating under the Subject Domain Names at issue are under the complete control of Defendants, and they have the ability to modify registration data and content, change hosts and, most importantly, redirect traffic to other websites they control. (See Gaffigan Decl. ¶¶ 7-9.) Moreover, Defendants operate their Internet websites operating under the Subject Domain Names, which they optimize for the illegal distribution of performances of ABS-CBN's copyrighted works using counterfeits of ABS-CBN's Marks. The optimization process provides Defendants with their power to unfairly compete with ABS-CBN by catapulting their illegal websites into top search engine results. All of that optimization power, built through the illegal use of the ABS-CBN Marks, can easily be transferred to a new domain name in a matter of minutes through what is known as a redirect. (See id. at ¶¶ 8-10.) Essentially, Defendants could use a redirect to push traffic from the websites operating under the Subject Domain Names to new domains not yet identified. (Id.) The result would be to slingshot the new domains to the top of the search engine results pages by leveraging the Internet traffic to the websites operating under the Subject Domain Names in suit, which was built through the illegal use of the ABS-CBN Marks. (See id. at ¶¶ 8-10 and Comp. Ex. B thereto.) In short, Defendants would completely erase the status quo by transferring all of the benefits of their prior illegal activities to new websites. (Id.)

Federal courts have long recognized that civil actions against counterfeiters – whose very businesses are built around the deliberate misappropriation of rights and property belonging to others – present special challenges that justify proceeding on an *ex parte* basis. Time Warner Enter. Co. v. Does #1-2, 876 F. Supp. 407, 410-11 (E.D.N.Y. 1994) (compiling cases and noting, "[w]here plaintiffs have shown that a danger exists of destroying or transferring infringing goods, courts in this Circuit have not hesitated to grant *ex parte* orders under either the Lanham Act or the Copyright Act."); see also Chanel, Inc. v. Chanel Nick, Case No. 15-cv-60398-BB (S.D. Fla. Mar. 4, 2015, entered on docket Mar. 5, 2015) (Order granting *Ex Parte* Application for Temporary Restraining Order). This Court should prevent an injustice from occurring by issuing a temporary restraining order which precludes Defendants from continuing to display infringing content via the websites operating under the Subject Domain Names and which, after allowing an opportunity for objections, temporarily places control of the websites at issue in the hands of the Court. Only such an order will prevent ongoing irreparable harm and maintain the status quo.

**B.      Standard for Temporary Restraining Order and Preliminary Injunction.**

In this Circuit, the standard for obtaining a temporary restraining order and the standard for obtaining a preliminary injunction are the same. See Emerging Vision, Inc. v. Glachman, Case No. 10-cv-80734, 2010 WL 3293346, at *3 (S.D. Fla. June 29, 2010) (citing Siegel v. LePore, 120 F. Supp. 2d 1041 (S.D. Fla. 2000) aff'd 234 F.3d 1163 (11th Cir. 2000)). In order to obtain a temporary restraining order or a preliminary injunction, a party must establish "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225-26 (11th Cir. 2005); see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 985 (11th Cir. 1995) (affirming entry of preliminary injunction). ABS-CBN's evidence establishes all of the relevant factors. Accordingly, preliminary injunctive relief is appropriate.

**1.      Probability of Success on the Merits of ABS-CBN's Claims.**

**(a)      Likelihood of Success on Counterfeiting and Infringement Claim.**

Title 15 U.S.C. § 1114 provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or

colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake, or to deceive." ABS-CBN must demonstrate (1) ownership of the trademarks at issue; (2) Defendants' use of the trademarks is without ABS-CBN's authorization; and (3) Defendants' use is likely to cause confusion, mistake, or deception as to the source, affiliation, or sponsorship of Defendants' Services. See 15 U.S.C. § 1114(1). ABS-CBN's evidence submitted herewith satisfies the three requirements of 15 U.S.C. § 1114.

The first two elements of ABS-CBN's trademark counterfeiting and infringement claims are easily met. The ABS-CBN Registered Marks are owned by ABS-CBN and registered on the Principal Register of the United States Patent and Trademark Office. (See Lawrence Decl. ¶ 4; see also ABS-CBN's Trademark Registrations, ECF No. [1-2].) Moreover, Defendants have never had the right or authority to use the ABS-CBN Marks. (See Lawrence Decl. ¶¶ 12; 14-15.)

The Eleventh Circuit uses a seven-factor test in determining the third element, likelihood of confusion. See Ross Bicycles, Inc. v. Cycles USA, Inc., 765 F.2d 1502, 1506 (11th Cir. 1985). These factors, as outlined in Safeway Store, Inc. v. Safeway Discount Drugs, Inc., are: (1) the strength of the mark; (2) the similarity of marks; (3) the similarity of the services; (4) similarity of the sales methods; (5) the similarity of advertising media; (6) defendants' intent; and (7) evidence of actual confusion. See Safeway Store, Inc. v. Safeway Discount Drugs, Inc., 675 F.2d 1160, 1164 (11th Cir. 1982); see also Lipscher v. LRP Publ'ns, Inc., 266 F.3d 1305, 1303 (11th Cir. 1997). The seven factors listed are to be weighed and balanced and no single factor is dispositive. (Id.)

### (1) Strength of the Marks.

A trademark's strength is determined by viewing the mark in its entirety as it appears in the marketplace. See Lone Star Steakhouse and Saloon, Inc. v. Longhorn Steaks, Inc., 106 F.3d 355, 362 (11th Cir. 1997). The spectrum of protectability and strength for trademarks is divided into four primary types of designations: (1) coined, fanciful or arbitrary; (2) suggestive; (3) descriptive; and (4) generic. See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768, 112 S. Ct. 2753, 120 L.Ed.2d 615 (1992). Arbitrary or fanciful marks are the strongest and deemed inherently distinctive and entitled to protection. (Id.) It cannot be seriously disputed that the ABS-CBN Marks are strong, arbitrary, and fanciful marks. (See Lawrence Decl. ¶ 4; see also ABS-CBN's Trademark Registrations, ECF No. [1-2].)

The ABS-CBN Marks have also acquired secondary meaning. ABS-CBN has expended substantial time, labor, skill, and expense in developing, advertising, and promoting the ABS-CBN Marks. (See Lawrence Decl. ¶¶ 7-11.) The ABS-CBN Marks enjoy widespread recognition and are prominent in the minds of consumers. Indeed, the ABS-CBN Marks are among the most widely recognized trademarks by the Filipino community in the United States. (See id. at ¶¶ 7-9.)

### (2)      Similarity of the Marks.

Likelihood of confusion is greater when an infringer uses the exact trademark. Turner Greenberg Assocs. v. C & C Imps., 320 F. Supp. 2d 1317, 1332 (S.D. Fla. 2004). Defendants are using marks that are identical to the ABS-CBN Marks. (Compare ABS-CBN's Trademark Registrations, ECF No. [1-2] with Defendants' Websites ECF Nos. [1-4] and [1-5].)

### (3)      Similarity of the Services.

"The greater the similarity between the products and services, the greater the likelihood of confusion." John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 976 (11th Cir. 1983). Defendants are offering the same types of services ABS-CBN distributes and offers. (See Lawrence Decl. ¶¶ 4, 9-12; see generally Defendants' Websites, ECF Nos. [1-4] and [1-5].) Because they bear counterfeits of the ABS-CBN Marks, Defendants' Services appear virtually identical to ABS-CBN's genuine and authorized services in the consumer market. Standing alone, this similarity can be held sufficient to establish a likelihood of confusion. See John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 976 (11th Cir. 1983).

### (4)      Similarity of Distribution and (5) Advertising Method.

Convergent marketing channels increase the likelihood of confusion. See Turner Greenberg Assocs., 320 F. Supp. 2d at 1332. Both ABS-CBN and Defendants advertise their services using at least one of the same marketing channels, the Internet, in the same geographical distribution areas within the United States, including the Southern District of Florida. (Lawrence Decl. ¶¶ 4-11, 12-13, 16-22; see generally Defendants' Websites attached as Ex. 3 and 4 to the Complaint, ECF Nos. [1-4] and [1-5].) Moreover, both target the same general U.S. based Filipino customers, and as such, ABS-CBN is directly competing with Defendants' broadcast distribution services. Moreover, Defendants use at least one of the same methods of distribution, i.e., instant Internet streaming, as ABS-CBN.

### (6) Defendants' Intent.

In this district, it has been held that when an alleged infringer adopts a mark "with the intent of obtaining benefit from the plaintiff's business reputation, 'this fact alone may be sufficient to justify the inference that there is confusing similarity.'" Turner Greenberg Assocs., 320 F. Supp. 2d at 1333, citing Carnival Corp. v. Seaescape Casino Cruises, Inc., 74 F. Supp. 2d 1261, 1268 (S.D. Fla. 1999). In a case of clear-cut copying, it is appropriate to infer Defendants intended to benefit from ABS-CBN's reputation, to ABS-CBN's detriment. See Playboy Enterprises, Inc. v. P.K. Sorren Export Co. Inc. of Florida, 546 F. Supp. 987, 996 (S.D. Fla. 1982).

### (7) Evidence of Actual Confusion.

Actual confusion is unnecessary to establish infringement, since, the test is likelihood of confusion. See Frehling Enters. v. Int'l Select Group, Inc., 192 F.3d 1330, 1340 (11th Cir. 1999). In this case, however, it is reasonable to infer actual confusion exists in the marketplace based upon the circumstantial evidence available. Defendants are advertising, promoting, and offering distribution services which are identical in nature to those services offered, sold, and authorized by ABS-CBN. (See Lawrence Decl. ¶¶ 12-15; see Ex. 1 to the Complaint, ECF No. [1-2]; see generally Defendants' Websites, ECF Nos. [1-4] and [1-5].)

The above seven factors weigh in ABS-CBN's favor, and ABS-CBN has therefore shown a probability of success on the merits of its trademark counterfeiting and infringement claim.

### (b) Likelihood of Success on False Designation of Origin Claim.

As with a trademark infringement claim, the test for liability for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), is also whether the public is likely to be deceived or confused by the similarity of the marks at issue. Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 780, 112 S. Ct. 2753, 120 L.Ed.2d 615 (1992). Whether the violation is called infringement, unfair competition, or false designation of origin, the test is identical -- is there a "likelihood of confusion?" Id. Therefore, because ABS-CBN has established a substantial likelihood of success on the merits of its trademark counterfeiting and infringement claim against Defendants, a likelihood of success is likewise established as to ABS-CBN's false designation of origin claim.

### (c) Likelihood of Success - Common Law Unfair Competition.

Whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion

between the plaintiff's and the defendant's services is also the determining factor in the analysis of unfair competition under the common law of Florida. <u>Rolex Watch U.S.A., Inc. v. Forrester</u>, No. 83–8381–Civ-Paine, 1986 WL 15668, at *3 (S.D. Fla. Dec. 9, 1987) ("The appropriate test for determining whether there is a likelihood of confusion, and thus trademark infringement, false designation of origin, and unfair competition under the common law of Florida, is set forth in <u>John H. Harland, Inc. v. Clarke Checks, Inc.</u>, 711 F.2d 966, 972 (11th Cir. 1983.)".) ABS-CBN has established there is a likelihood of confusion regarding Defendants' use of the ABS-CBN Marks in connection with their services. Accordingly, ABS-CBN is also likely to succeed on the merits of its common law unfair competition claim.

### (d) Likelihood of Success on Direct Infringement of Copyright Claim Against Defendants 1-8.

Defendants' ongoing copying, dissemination and performance of ABS-CBN's works by streaming, facilitating access to the copyrighted works to users through their respective websites operating under the Subject Domain Names, directly infringe ABS-CBN's exclusive rights under the Copyright Act, 17 U.S.C. §§ 106(1), (3) and (4).

Recently, the United States Supreme Court held that a company which sold a service which allowed its subscribers to select a show from a menu on Aereo's website and watch television programs over the Internet at about the same time as the programs are broadcast over the air, "performed" the work and thus had direct liability under the Copyright Act, 17 U.S.C § 106(4). <u>See</u> <u>American Broadcasting Companies, Inc. v. Aereo, Inc.</u>, 573 U.S. ---, 2014 U.S. LEXIS 4496 (U.S. June 25, 2014). In <u>Aereo</u>, television producers, marketers, distributors, and broadcasters that own the copyrights in many of the programs that Aereo streamed sued Aereo for infringement of their "performance" right. Aereo claimed that it did not perform anything; but rather, merely supplied users with equipment which they themselves could use to request on-demand performance of programming, so, it was only the subscribers who "performed" the works. <u>Id</u>. at *13.

The Court expressly rejected each of Aereo's arguments. First, the Court stated that under the Transmit Clause of the Copyright Act, both the broadcaster and viewer "perform" the work when they transmit the video content because they both show the program's images and make audible the program's sounds. <u>Id</u>. at *17-18. Second, the Court rejected Aereo's argument that it should not be directly liable for copyright infringement because Aereo's subscribers select the copyrighted works from a menu on Aereo's website, finding that Aereo "performed" when it

responded to the user's request and streamed the video. Id. at *21-22. Third, the Court held that "whether Aereo transmits from the same or separate copies, it performs the same work; it shows the same images and makes audible the same sounds. Therefore, when Aereo streams the same television program to multiple subscribers, it 'transmit[s] . . . a performance' to all of them[]", regardless of whether Aereo's users "receive it in the same place or in separate places and at the same time or at different times." Id. at *28-29 (internal quotations omitted).

In this action, Defendants' infringement is far more patent than in Aereo. Defendants facilitate a copy of near-contemporaneous, daily programming, as well as archived movies and shows on their websites; advertise the copyrighted works available on-demand through their websites; organize the content by show or movie title; provide the link to the video through their websites; when users click the "Play" button, the websites immediately begin streaming a full-length broadcast of the video. (Lawrence Decl. ¶ 13; Gaffigan Decl. ¶ 2.)

Moreover, Defendants are believed to be directly liable for violating ABS-CBN's reproduction and dissemination rights because Defendants, rather than their users, facilitate access to copies of ABS-CBN's content on their websites and perform those copies for users. (Gaffigan Decl. ¶ 2.) "Public distribution of a copyrighted work is a right reserved to the copyright owner, and usurpation of that right constitutes infringement. See Cable/Home Communication Corp. v. Network Productions, Inc., 902 F.2d 829, 843 (11th Cir. 1990).").

### (e) Likelihood of Success on Contributory Infringement of Copyright Claim Against Defendants 1-8.

In addition to directly infringing ABS-CBN's content, Defendants are secondarily liable for enabling, encouraging and inducing users' infringement. To establish a prima facie case of contributory infringement, a plaintiff must establish: (1) direct infringement; (2) that defendant had knowledge of the direct infringement; and (3) that defendant intentionally induced, encouraged or materially contributed to the direct infringement. See Tiffany (NJ), LLC v. Liu Dongping, 2010 U.S. Dist. LEXIS 121232, 14-17 (S.D. Fla. Oct. 29, 2010) (citing MGM Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 930, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005)).

The criteria for contributory liability are easily met here. First, Defendants' users of their respective websites directly infringe ABS-CBN's copyrights, *inter alia*, by viewing copies of the videos and may create copies of that content. See 17 U.S.C. § 106(1). Second, Defendants have actual and constructive knowledge of the infringement since they provide and perform the infringing content, and do so for the purpose of users' viewing and copying. Third, Defendants

induce, cause and/or materially contribute to the infringing activity of users for all the reasons stated herein, including but not limited to: providing the infringing content for viewing; identifying ABS-CBN as the source and using the ABS-CBN Marks to advertise and promote the content; organizing the content; advertising and promoting the infringing content through search engines to drive traffic to the websites operating under the Subject Domain Names; and by streaming the content. (See Exs. 3 and 4 of the Complaint ECF Nos. [1-4] and [1-5].) Defendants do not merely respond to user requests in a passive, content-neutral, and automated manner. To the contrary, as set forth above, Defendants control the selection and provision of the content and are the sole cause making that content broadly available and accessible to the public. Without the active and material contributions from Defendants, the infringement complained of herein could not have taken place.

In addition, Defendants are vicariously liable. Tiffany (NJ), U.S. Dist. LEXIS 121232, at *14-17 holds that for showing a prima facie case: (1) that defendant profited from a direct infringement; and (2) that defendant had the right to stop or limit the infringement but did not. (citing Grokster, 545 U.S. 913, 930)). First, the large inventory of popular entertainment content on Defendants' respective websites is designed to attract users to the infringing content. This, in turn, increases Defendants' profits from the advertisers who pay Defendants based on the number of views that their advertising receives. (Gaffigan Decl. ¶¶ 4-6; Lawrence Decl. ¶ 18.) By performing the copyrighted works, and encouraging, facilitating and assisting in the viewing and copying of the TV shows and movies, Defendants attract thousands of page views each day. (Gaffigan Decl. ¶ 6.) The infringement-driven traffic increases the volume of online advertising impressions and transactions, and thereby increases online advertising revenues and enables Defendants to charge advertisers higher rates. (Gaffigan Decl. ¶¶ 4-6; see Columbia Pictures Indus., 710 F.3d at 1036-37 ("Fung generates revenue almost exclusively by selling advertising space on his websites. The more users who visit Fung's websites and view the advertisements supplied by Fung's business partners, the greater the revenues to Fung. Because 'the extent of the [services'] use determines the gain to [Fung], the commercial sense of [his] enterprise turns on high-volume use, which the record shows is infringing.'" (quoting Grokster, 545 U.S. at 940)).) Defendants use multiple ad services from which they likely derive revenue from the advertising impressions and sales of highly valuable user analytic data. (Gaffigan Decl. ¶ 5 and Ex. B thereto) Moreover, the wrongfully obtained consumer traffic increases the value of the Subject

Domain Names themselves. (Lawrence Decl. ¶¶ 4-6.) In these ways, Defendants' business model critically depends on attracting users to view ABS-CBN's highly valued copyrighted works and Defendants do, in fact, derive substantial revenue from the single purpose for which the websites operating under the Subject Domain Names exist – to re-broadcast TV and movie content desirable to Filipinos worldwide. Second, because Defendants caused the infringed content to be loaded on the websites operating under the Subject Domain Names and be streamed, they could stop the infringement at any point. Accordingly, Defendants are contributorily and vicariously liable for copyright infringement, and injunctive relief is necessary to stop their infringement.

### 2.    Plaintiffs are Suffering Irreparable Injury

[A] sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of … [a] substantial threat of irreparable harm." Ferrellgas Ptnrs., L.P. v. Barrow, 143 Fed. Appx., 180, 191 (11th Cir. 2005) (citing McDonald's Corp. v. Robertson, 147 F.3d 1301, 1310 (11th Cir. 1998). Such a finding of irreparable injury following a showing of likelihood of confusion is virtually always made in a case such as this, where a plaintiff has demonstrated it will lose control of its reputation as a result of a defendant's activities. Id. A likelihood of confusion exists herein because Defendants have engaged in counterfeiting activities using spurious designations indistinguishable from the ABS-CBN Marks.

Additionally, harm in copyright cases might be "irremediable, or irreparable, for many reasons, including that a loss is difficult to replace or difficult to measure, or that it is a loss that one should not be expected to suffer." Salinger v. Colting, 607 F.3d 68, 81 (2d Cir. 2010); see WPIX, Inc. v. ivi, Inc., 765 F. Supp. 2d 594, 617-621 (S.D.N.Y. 2011) (granting injunction based on streaming over Internet of copyrighted TV programming).

ABS-CBN suffers financial harm from Defendants' streaming of the Copyrighted Works, which undermines the value of that content and the ability of ABS-CBN to profit from its investment, and also harm from the loss of control over its programming, harm from diversion of their customers from its subscription services, and harm from decreases in value of its negotiated contracts, among other harms. (Lawrence Decl. ¶¶ 19-23.) These harms are notoriously difficult to quantify, and accordingly are considered irreparable. (Lawrence Decl. ¶ 22); see, e.g., Salinger, 607 F.3d at 82 (loss of sales due to infringement is "notoriously difficult" to prove); WPIX, 765 F. Supp. 2d at 620 (finding "taking away" indeterminate profits and number of

"viewers … which compensate or otherwise obtain permission from plaintiffs for the use of their works" are "unquantifiable" harms, they are "irreparable.").

Moreover, because Defendants' infringing conduct divests ABS-CBN of control over its content and of its exclusive copyright rights, it is irreparable. See Salinger, 607 F.3d at 82 (noting how violation of copyright owner's "right to exclude" renders monetary remedies inadequate in a wide range of circumstances) (quoting eBay, Inc. v. MercExchange, L.L.C., 547 U.S. 388, 395 (2006); see also Bait Prods. Pty Ltd. v. Murray, 2013 U.S. Dist. LEXIS 120170, at *12 (M.D. Fla. Aug. 23, 2013) (holding "due to the possibility of future infringement of the motion picture …, monetary damages alone are inadequate to compensate Bait Productions for any injury it has sustained or will potentially sustain in the future.").

### 3.    The Balance of Hardship Tips Sharply in ABS-CBN's Favor.

ABS-CBN has expended substantial time, money, and other resources to develop the quality, reputation, and goodwill associated with the ABS-CBN Marks and the ABS-CBN Copyrighted Works. (Lawrence Decl. ¶¶ 7-10.), Should Defendants be permitted to continue their unlawful activities, ABS-CBN will suffer substantial losses and damage to its reputation. (See id. at ¶¶ 11, 23.) ABS-CBN is suffering irreparable harm while "[i]t is axiomatic that an infringer of copyright cannot complain about the loss of ability to offer its infringing product." WPIX, 765 F. Supp. 2d at 603; see, e.g., EyePartner, Inc. v. Kor Media Group LLC, 2013 U.S. Dist. LEXIS 98370, at *16 (and cases cited therein). Defendants will suffer no legitimate hardship in the event a temporary restraining order is issued, because Defendants have no right to engage in their present infringing activities.

### 4.    The Relief Sought Serves the Public Interest.

Defendants are engaged in unlawful activities and are directly defrauding the consuming public by palming off Defendants' services as ABS-CBN's genuine and authorized services. The public has an interest in not being misled as to the origin, source, or sponsorship of trademarked services or products. See Nailtiques Cosmetic Corp. v. Salon Sciences, Corp., 1997 WL 244746, 5, 41 U.S.P.Q.2d 1995, 1999 (S.D. Fla.1997) ("The interests of the public in not being victimized and misled are important considerations in determining the propriety of granting injunctive relief.").

The public interest is protected by issuing an injunction because ABS-CBN loses valuable incentives to continue to create programming if it continues to be deprived of (1) control over its content, (2) how and where the content gets distributed, including Internet

retransmissions through negotiated licenses and its portals, and (3) potential revenue sources. Protecting Plaintiffs' copyright rights is consistent with, if not equivalent to, promoting the public interest. See Salinger, 607 F.3d at 82; WPIX, 765 F. Supp. 2d at 621; CBS Broad., Inc. v. EchoStar Communs. Corp., 265 F.3d 1193, 1198 (11th Cir. 2001) ("the public interest lies with protecting the rights of copyright owners."); C.B. Fleet Co. v. Unico Holdings, Inc., 510 F. Supp. 2d 1078, 1084 (S.D. Fla. 2007) ("The public interest can only be served by upholding copyright protection and preventing the misappropriation of protected works.").

### C.    The Equitable Relief Sought is Appropriate.

The Lanham Act authorizes courts to issue injunctive relief "according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …" 15 U.S.C. § 1116(a). Moreover, ABS-CBN's Copyrighted Works are currently being infringed and will continue to be infringed absent injunctive relief against Defendants pursuant to 17 U.S.C. § 502.

#### 1.    Entry of an Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of ABS-CBN's Trademarks is Appropriate.

ABS-CBN requests an order requiring Defendants to immediately cease all use of the ABS-CBN Marks, or substantially similar marks, including on or in connection with all Internet websites and domain names owned and operated, or controlled by them. Such relief is necessary to stop the ongoing harm to ABS-CBN's trademarks and goodwill and to prevent Defendants from continuing to benefit from the increased traffic to their illegal website operation created by their unlawful use of the ABS-CBN Marks. Many Courts have authorized immediate injunctive relief in cases involving the unauthorized use of trademarks.[2]

#### 2.    Entry of an Order Prohibiting Transfer of the Subject Domain Names During the Pendency of this Action is Appropriate.

To preserve the status quo, ABS-CBN seeks an order temporarily modifying control of and prohibiting Defendants from transferring the Subject Domain Names to other parties. Under the operating rules of domain name registrars, defendants involved in domain name litigation easily can, and often will, change the ownership of a domain name and thereby frustrate the court's ability to provide relief to the plaintiff. (See Gaffigan Decl. ¶ 7.) Moreover, Defendants

---

[2] See, e.g., Tiffany (NJ), LLC, v. Tiffanyeshop, Case No. 15-60628-cv-WPD, (S.D. Fla. April 28, 2015) (Order Granting Ex Parte Application for Entry of Temporary Restraining Order); Gucci America, Inc., v. 2014Gucci.com, Case No. 14-cv-62963-WPD (S.D. Fla. Jan. 22, 2015, entered on docket Jan. 26, 2015) (same).

can modify website content to thwart discovery and redirect traffic to thwart effective injunctive relief. (See id. at ¶¶ 7-10.) This Court and others, have authorized immediate injunctive relief in cases involving the unauthorized use of trademarks.[3] Here, an interim order prohibiting Defendants from transferring the Subject Domain Names poses no burden on them, preserves the status quo, and ensures that this Court, after fully hearing the merits of this action, will be able to afford ABS-CBN full relief.

Because the domain name registrars exercise effective control over whether or not domain names can be transferred, the Lanham Act explicitly provides for registrars to deposit domain name certificates with the court, thereby recognizing the court's control over use of the domain names. See 15 U.S.C. § 1114(2)(D); 15 U.S.C. § 1125(d)(2)(C); see also Philip Morris USA, Inc. v. Otamedia Ltd., 331 F. Supp. 2d 228, 230 (S.D.N.Y. 2004) (affirming registrar's decision to deposit certificate with court where registrant used web site to make infringing sales). By this mechanism, the parties, and this Court, are assured that the ownership of the domain names will not change while the action is proceeding. Accordingly, ABS-CBN also seeks an order requiring the registrar for the Subject Domain Names to deposit domain name certificates.

### 3. Entry of an Order Modifying Control, Redirecting, and Disabling the Subject Domain Names is Appropriate.

An interim order redirecting, transferring, disabling, or canceling the offending domain names is the only means of affording a plaintiff interim relief that avoids irreparable harm. Accordingly, in order to disable and/or redirect the Subject Domain Names, ABS-CBN requests the Court enter an order requiring the registrar and the registry that maintain the Top Level Domain ("TLD") Zone files for the Subject Domain Names change the registrar of record for the Subject Domain Names to a holding account with a Registrar of ABS-CBN's choosing, where they will be held in trust for the Court during the pendency of this action and set to automatically redirect to http://servingnotice.com/BL4G47/index.html.[4] Upon such redirection, a copy of all of

---

[3] See ABS-CBN International, et al. v. Jonathan Dela Cruz, Case No. 15-cv-60835-WPD (S.D. Fla. April 22, 2015) (prohibiting Defendant from transferring domain names during pendency or until further Order of the Court); Tiffany (NJ), LLC, v. Tiffanyeshop, Case No. 15-60628-cv-WPD, (S.D. Fla. April 28, 2015) (same); Gucci America, Inc., v. 2014Gucci.com, Case No. 14-cv-62963-WPD (S.D. Fla. Jan. 22, 2015, entered on docket Jan. 26, 2015) (same).

[4] Such relief regarding a change of registrars was granted by this Court in ABS-CBN International, et al. v. Jonathan Dela Cruz, Case No. 15-cv-60835-WPD (S.D. Fla. April 22, 2015); Tiffany (NJ), LLC, v. Tiffanyeshop, Case No. 15-cv-60628-WPD, (S.D. Fla. April 28, 2015);Gucci America, Inc., v. 2014Gucci.com, Case No. 14-cv-62963-WPD (S.D. Fla. Jan. 22, 2015, entered on docket Jan. 26, 2015).

the pleadings, other documents and Court orders issued in this matter will be immediately visible to each Defendant the moment it types its respective domain name into its web browser. The Subject Domain Names would serve as the single most effective means of notifying Defendants of the pendency of this action and the relief sought by ABS-CBN and affording them and any other interested parties with an opportunity to object.

**D.      A Bond Should Secure the Injunctive Relief.**

Because of the strong and unequivocal nature of ABS-CBN's evidence of counterfeiting and infringement, false designation of origin, unfair competition, and direct and secondary infringement of copyright, ABS-CBN respectfully requests this Court require it to post a bond of ten thousand dollars ($10,000.00) in Defendants' favor. The amount of posting of security upon issuance of a temporary restraining order or permanent injunction is vested in the Court's sound discretion. Fed. R. Civ. P. 65(c).

**IV.      CONCLUSION**

In view of the foregoing, Plaintiffs, ABS-CBN Corporation, ABS-CBN Film Productions, Inc. d/b/a Star Cinema, and ABS-CBN International Corporation respectfully requests this Court grant their *ex parte* application and enter a temporary restraining order as to Defendants in the form submitted herewith and schedule a hearing on ABS-CBN's Motion for Preliminary Injunction before the expiration of the temporary restraining order.

DATED: May 15, 2015.                    Respectfully submitted,

STEPHEN M. GAFFIGAN, P.A.

By:
Stephen M. Gaffigan (Fla. Bar No. 025844)
Virgilio Gigante (Fla. Bar No. 082635)
Christine Ann Daley (Fla. Bar No. 98482)
401 East Las Olas Blvd., #130-453
Ft. Lauderdale, Florida 33301
Telephone: (954) 767-4819
Facsimile: (954) 767-4821
E-mail: stephen@smgpa.net
E-mail: leo@smgpa.net
E-mail: Christine@smgpa.net

Attorneys for Plaintiffs

## SCHEDULE A
## DEFENDANTS BY NUMBER AND SUBJECT DOMAIN NAMES

| Defendant Number | Subject Domain Name |
|---|---|
| 1 | freepinoychannel.com |
| 2 | lambingan.to |
| 3 | pinoymovie.to |
| 4 | pinoynetwork.to |
| 5 | pinoytambayan-replay.com |
| 6 | pnoytambayantv.com |
| 7 | tambaytayo.com |
| 8 | tvnijuan.net |
| 9 | phstream.com |
| 10 | streampinoy.info |
| 11 | tambayanatin.com |