**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 15-61002-CIV-DIMITROULEAS/SNOW

ABS-CBN CORPORATION, *et al.*

        Plaintiffs,

vs.

FREEPINOYCHANNEL.COM, *et al.*,

        Defendants.

_____/



**DECLARATION OF ELISHA J. LAWRENCE**
**IN SUPPORT OF PLAINTIFFS' *EX PARTE* APPLICATION FOR**
**TEMPORARY RESTRAINING ORDER**

    I, Elisha J. Lawrence, declare and state as follows:

    1.    I am over 18 years of age and have personal knowledge of the facts set forth herein. If called upon to do so, I could and would competently testify as to the following facts in support of Plaintiffs' *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction (the "Application for Temporary Restraining Order") Against Defendants, the Individuals, Partnerships and Unincorporated Associations Identified on Schedule "A" hereto and Does 1-100 (collectively "Defendants"). I am personally knowledgeable of the matters set forth in this Declaration and, if called upon to do so, I could and would competently testify to the following facts set forth below.

    2.    I am employed by Plaintiff, ABS-CBN International Corporation, as Assistant Vice President of Global Anti-Piracy & Content Security. ABS-CBN International Corporation is a California Corporation with its principal place of business located at 150 Shoreline Drive, Redwood City, California 94065. ABS-CBN International Corporation is a subsidiary of ABS-CBN Corporation. ABS-CBN Corporation also owns ABS-CBN Film Productions, Inc. ABS-CBN

Corporation and ABS-CBN Film Productions, Inc. are companies organized under the laws of the Republic of the Philippines with their principal places of business in Quezon City, Philippines. ABS-CBN International Corporation, ABS-CBN Corporation, and ABS-CBN Film Productions, Inc. are collectively referred to herein as "ABS-CBN" or "Plaintiffs."

3.      In my capacity as Assistant Vice President of Global Anti-Piracy & Content Security for ABS-CBN International Corporation, I am responsible, in part, for global anti-piracy enforcement of ABS-CBN's movie and television content, managing ABS-CBN's intellectual property portfolio, and solving content security issues. I am thus familiar with ABS-CBN's distribution services, identities of ABS-CBN's licensed distributors and ABS-CBN's intellectual property portfolio, including its many copyright registrations.

4.      ABS-CBN is the largest media and entertainment company in the Philippines. With its 12 production studios, ABS-CBN produces thousands of hours of original content every year in the Republic of the Philippines (the "Philippines") for its numerous television stations, including daily drama teleseries, drama anthologies, movies, musical and variety shows, game shows, reality shows, news programs, current affairs programs, documentaries and public affairs programs. ABS-CBN Corporation is the owner of the registered copyrights in and to the TV shows identified in Exhibit 2 to the Complaint, and ABS-CBN Film Productions, Inc. is the owner of the registered copyrights in and to the Movies identified in Exhibit 2 to the Complaint, ECF No. [1-3]. ABS-CBN Corporation is the owner of the unregistered copyrights in and to the movies and TV shows identified in Exhibits 3 and 4 of the Complaint, ECF Nos. [1-4] and [1-5]. Together, these works are referred to herein collectively as the "Copyrighted Works." ABS-CBN Corporation, ABS-CBN International Corporation, and ABS-CBN Film Productions, Inc. all share exclusive rights in and to the ABS-CBN Copyrighted Works. Moreover, ABS-CBN

Corporation, ABS-CBN International Corporation, and ABS-CBN Film Productions, Inc. are licensed to distribute, perform and enforce their rights to the Copyrighted Works. ABS-CBN also promotes and distributes such content on the Internet, including within this Judicial District, under the registered trademarks identified in Paragraph 5 and the common law trademark identified in Paragraph 6 below.

5.    ABS-CBN International Corporation is, and at all times relevant hereto has been, the owner of all rights in and to the following Federally registered trademarks:

| Trademark | Registration Number | Registration Date | Class / Services |
|---|---|---|---|
| **ABS-CBN** | 2,334,131 | March 28, 2000 | IC 038 – television broadcasting services via satellite and cable |
| **THE FILIPINO CHANNEL** | 1,994,383 | Aug. 20, 1996 | IC 038 – Cable television broadcast IC 041 – television show production and programming. |
| **TFC** | 3,733,072 | Jan. 5, 2010 | IC 038 – Cable television broadcast IC 041 – television show production and programming. |

(the "ABS-CBN Registered Marks") which are registered on the Principal Register of the United States Patent and Trademark Office and and are used in connection with the services identified in the categories above. True and correct copies of the Federal Registrations for each

of the ABS-CBN Marks listed above are attached to the Complaint as Exhibit "1," ECF No. [1-2].

6.      ABS-CBN is also, and at all times relevant hereto has been, the owner of the following common law trademark (the "Common Law Mark") used in connection with ABS-CBN's television broadcasting services via satellite and cable:

| Trademark |
| :---: |
| |

The ABS-CBN Registered Marks and the ABS-CBN Common Law Mark are collectively referred to herein as the "ABS-CBN Marks." ABS-CBN Corporation and ABS-CBN Film Productions, Inc. share exclusive rights in and to the ABS-CBN Marks with ABS-CBN International Corporation. Moreover, ABS-CBN Corporation and ABS-CBN Film Productions, Inc. are licensed to use and enforce the ABS-CBN Marks.

7.      ABS-CBN is engaged in the creation, promotion, and distribution in interstate commerce, including within this district, of high quality television and movie programming under the ABS-CBN Marks.

8.      All of ABS-CBN's TV shows and movies are initially aired through its broadcast facilities in the Philippines.  Simultaneous with, or after, that original broadcast, ABS-CBN's content is then distributed throughout the world via customer-paid subscriptions, including through numerous premium channels carried by cable and other telecom providers, such as DirecTV, Time Warner Cable, Cox Communications, Comcast, AT&T, Verizon Services Corp., Braintree Cable, Cablevision, CC Communications, Centurytel, Champion

Broadband, Charter, Duncan Cable TV, En-Touch, Frontier Communications, GCI Cable, Golden Rain Foundation, Groton Utilities, Hawaiian Telecom, ICable, KPU CommVision, MCV, MTA Communications, Norwood Light Dept., OpenBand Media, OSN, Phonoscope, Rainier Cable TV, RCN, Rogers, San Bruno Cable, Service Electric, Shaw, Starhub, Summit Broadband, SureWest, Tacoma Public Utilities, TVMax, Wave Broadband, Windjammer Cable, Zito Media, and many more.

9.      As a result of the foregoing, the ABS-CBN Marks have acquired fame in the consumer market for a wide variety of broadcast distribution services. The ABS-CBN Marks have come to symbolize the enormous goodwill of ABS-CBN's business throughout the United States, the Philippines, and the world. The ABS-CBN Marks have never been abandoned. ABS-CBN actively polices and enforces its trademark rights.

10.      ABS-CBN's genuine Copyrighted Works are distributed throughout the United States through Internet subscription services, such as TFC.TV and IWANTTV.COM.PH, as well as through its own 24-hour cable and satellite service entitled TFC (The Filipino Channel) and TFC IPTV, which offers Pay-Per-View Programming. As the Philippines' largest media and entertainment company, ABS-CBN has built significant goodwill and a positive reputation for quality programming and distribution services throughout the world, including in the United States due to the substantial Filipino Ex-Patriot Community. ABS-CBN has spent millions of dollars creating, promoting, and distributing its Copyrighted Works using the ABS-CBN Marks throughout the United States and the rest of the world.

11.      The ABS-CBN Marks are vital to ABS-CBN's business, representing a significant value of ABS-CBN's overall business and associated image. ABS-CBN suffers irreparable harm to its goodwill, as well as a direct monetary loss, when Defendants offer

illegal broadcast distribution services bearing identical or substantially similar trademarks.

12.    ABS-CBN discovered Defendants are promoting, advertising, offering for distribution, and/or performing ABS-CBN's copyrighted TV shows and movies on their fully interactive Internet websites operating under their individual, partnership and/or business association names identified on Schedule A hereto (the "Subject Domain Names"), using the ABS-CBN Marks without authorization. Defendants do not, nor have they ever had, the right or authority to use the ABS-CBN Marks. Further, the ABS-CBN Marks have never been assigned or licensed to be used on the websites operating under the Subject Domain Names.

13.    Prior to filing this Declaration, ABS-CBN accessed Defendants' websites operating under the Subject Domain Names. The websites advertise, offer for distribution, promote and/or perform ABS-CBN's Copyrighted Works under counterfeit or infringing trademarks which are exact copies of the ABS-CBN Marks. Each Internet website appears to be fully-interactive and appears to allow users to browse the online catalogue for episodes and movies that are the Copyrighted Works of ABS-CBN, and then instantly stream full versions of the aforementioned ABS-CBN Copyrighted Works. I personally reviewed the websites and/or web page captures reflecting ABS-CBN Copyrighted Works being performed in conjunction with the ABS-CBN Marks being used to promote and distribute such Copyrighted Works on the Internet websites operating under each of the Subject Domain Names. True and correct copies of these web pages and examples of Defendants' infringement of the ABS-CBN Marks and the ABS-CBN unregistered copyrights on Defendants' websites operating under the Subject Domain Names are included in Exhibits 3 and 4 to the Complaint, ECF Nos. [1-4] and [1-5].

14.    Prior to filing this Declaration, I reviewed ABS-CBN's contracts and confirmed that Defendants are not and never were entitled to broadcast or otherwise distribute the ABS-

CBN Copyrighted Works offered. I also confirmed that ABS-CBN does not now or ever conduct business with Defendants or their websites, and that Defendants otherwise have no right or authority to use the ABS-CBN Marks for any purpose.

15.     In sum, Defendants are infringing upon ABS-CBN's copyrights. Defendants are also infringing upon ABS-CBN's trademarks by offering ABS-CBN Copyrighted Works for distribution and promotion on their websites operating under the Subject Domain Names using ABS-CBN's trademarks.  Defendants do not have nor have they ever had authorization to use the ABS-CBN Marks as part of any broadcast distribution service.

16.     Genuine ABS-CBN programming is widely legitimately advertised, promoted, offered for subscription services and distributed by ABS-CBN, its authorized distributors and unrelated third parties via the Internet.

17.     Over the past several years, visibility on the Internet, particularly via Internet search engines, such as Google, has become increasingly important. Significant resources are spent on consumer education regarding the ABS-CBN brand and programming, including search engine optimization ("SEO") strategies.

18.     Defendants use unauthorized counterfeits of ABS-CBN's name and trademarks within the content of their websites in order to attract the automated eye of various search engines crawling the Internet looking for websites relevant to consumer searches for ABS-CBN related services, content, and information. Moreover, by having illegally embedded the ABS-CBN Marks on their websites, Defendants are increasing the visibility of their respective websites on the Internet and decreases the visibility of genuine ABS-CBN branded services and programs on search engines such as Google, and driving more users their websites. This infringement-driven traffic increases the volume of online advertising impressions and transactions, and thereby

increases online advertising revenues and enables Defendants to charge advertisers higher rates. This wrongfully obtained traffic will increase the value of the Subject Domain Names themselves. In these ways, Defendants' business model critically depends on attracting users with ABS-CBN's highly valued Copyrighted Works. Such illegal use results in unfair competition for ABS-CBN when competing for visibility on the World Wide Web, including within search engine results space.

19.     Also, due to Defendants' illegal distribution of ABS-CBN's Copyrighted Works and illegal use of the ABS CBN Marks on their websites, Defendants cause irreparable harm to ABS-CBN's brand and Marks, which are being associated with websites that provide pirated content with much lower viewing quality than those of legitimate ABS-CBN distribution services.

20.     Defendants' illegal infringement of ABS-CBN's Copyrighted Works also deprives ABS-CBN of the profits from the Copyrighted Works. By disseminating for free the Copyrighted Works (which consumers worldwide otherwise pay for through ABS-CBN's numerous pay-tv partners and through ABS-CBN's Internet subscription services), Defendants are diverting subscription revenues from ABS-CBN, as well as harming the value of ABS-CBN's negotiated deals with the pay-tv providers across the globe.

21.     Defendants' illegal conduct also interferes with ABS-CBN's distribution agreements with its pay-tv partners. Due to the worldwide nature of ABS-CBN's distribution, quantifying the number of customers diverted from legitimate ABS-CBN Copyrighted Works and legitimate ABS-CBN distribution outlets is difficult if not impossible to determine.

22.     Defendants' illegal conduct has also harmed ABS-CBN's own distribution services. ABS-CBN has invested millions of dollars in technology and personnel in order to distribute ABS-CBN's Copyrighted Works to subscribers in over 190 countries. Defendants' illegal conduct has

harmed that investment as well as the reputation of the brand due to the poor viewing quality of the content on Defendants' websites.  In addition, over the last several years, numerous salespeople, who sell ABS-CBN subscription packages, have lost their jobs due to the substantial decrease in sales due to widespread piracy.

23.    As a result of the (i) availability of the pirated ABS-CBN Copyrighted Works offered for distribution by Defendants under the ABS-CBN Marks and (ii) the existence of the illegal distribution network for ABS-CBN's Copyrighted Works on the World Wide Web, ABS-CBN is highly likely to experience irreparable damage to its reputation among consumers absent entry of an appropriate injunction.

I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct.    Executed the 12th day of May, 2015, at

_____ , _____.

Elisha J. Lawrence

**SCHEDULE A**
**DEFENDANTS BY NUMBER AND SUBJECT DOMAIN NAMES**

| Defendant Number | Subject Domain Name |
|---|---|
| 1 | freepinoychannel.com |
| 2 | lambingan.to |
| 3 | pinoymovie.to |
| 4 | pinoynetwork.to |
| 5 | pinoytambayan-replay.com |
| 6 | pnoytambayantv.com |
| 7 | tambaytayo.com |
| 8 | tvnijuan.net |
| 9 | phstream.com |
| 10 | streampinoy.info |
| 11 | tambayanatin.com |